THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY RENSLOW, Defendant-Appellant.

Third District    No. 80-219

Opinion filed July 14, 1981.

Gary L. Blank, of Chicago, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant, Terry Renslow, appeals from his conviction of one count of attempt (murder) and two counts of aggravated battery following a jury trial in the circuit court of Will County.

On December 9, 1977, Donald Nickel was at home when his door bell rang. Nickel went to the door, observed through a side window that there was a man outside, and opened the door. As he opened the door, he saw a second man a few feet away. The man at the door asked if he was Don Nickel, he said he was, and the man stabbed him in the stomach. Nickel staggered back, turned, and the man stabbed him in the back. Nickel shouted "Oh, my God, Tut," and the men fled. Nickel was then taken to the hospital. While Nickel was in the hospital two police officers visited him and showed him five photographs. He looked at the photographs for about one minute and identified the picture of Terry Renslow as that of his assailant.

Prior to his first trial, defendant made a motion requesting that Nickel be hypnotized for the purpose of discovering whether Nickel's identification of the defendant was accurate. This motion was denied. The first trial ended in a mistrial. Subsequently, the State was granted leave to file an additional information charging defendant with two counts of aggravated battery.

Prior to the second trial the State and the defendant entered into a plea agreement which was submitted to the trial judge for his approval on December 26, 1979. However, since the agreement failed to provide for a sentence of imprisonment, the trial judge refused to accept the agreement. An immediate oral motion for substitution of judge was then denied.

On March 10, 1980, the day set for the commencement of the retrial, the defendant again moved to have Nickel hypnotized, which motion was denied. The defendant then filed a written motion for substitution of judge, but this motion was also denied. The trial was conducted, and the jury tendered verdicts of guilty on each count. The trial judge vacated the aggravated battery findings and sentenced the defendant on the attempt (murder) charge only.

On appeal, the defendant raises five issues: (1) whether the defendant was subjected to double jeopardy by the charging of two additional counts of aggravated battery after the first trial had ended in a mistrial; (2) whether the trial court erred in denying defendant's motion for substitution of judge; (3) whether the trial court erred in denying the defendant's motion to have Nickel hypnotized; (4) whether the trial court erred in restricting cross-examination of Nickel; and (5) whether the prosecutor's closing argument was so inflammatory and prejudicial that it denied the defendant a fair trial. We affirm.

We first address the issue of whether or not the defendant was subjected to double jeopardy by the charging of the two additional counts of aggravated battery. Defendant contends that because he was only charged with attempt (murder) at his first trial, the State cannot charge

him with two additional crimes after the first trial ends in a mistrial. Defendant argues that all the possible charges must be brought against him prior to the first trial because to bring new charges after one trial has already been held would subject the defendant to double jeopardy.

■■■ We believe that in the case at bar, the defendant was not subjected to double jeopardy. In addition to attempt (murder), the defendant was charged with two counts of aggravated battery. It is well established that aggravated battery is a lesser included offense of attempt (murder) when both offenses arise from a single incident. (*People v. Brock* (1978), 64 Ill. App. 3d 64, 380 N.E.2d 1102.) At the defendant's first trial, it would have been perfectly proper for the trial judge to instruct the jury on aggravated battery as a lesser-included offense of attempt (murder) even though the defendant was not formally charged with aggravated battery. At the defendant's second trial, the trial judge could again have properly instructed the jury on aggravated battery as a lesser-included offense, and the jury could have found him guilty of aggravated battery even if the defendant had not been formally charged. Therefore, we see no prejudice resulting to the defendant from the fact that he was additionally charged with two counts of aggravated battery prior to the second trial.

Such a holding is consistent with existent case law. In *People v. Miller* (1966), 35 Ill. 2d 62, 219 N.E.2d 475, the court dealt with a situation virtually identical to the case at bar. In *Miller*, the defendants were indicted for rape. Following a mistrial, the rape indictment was dropped upon the State's motion and the grand jury returned a new indictment for rape of the same person and taking indecent liberties and contributing to the sexual delinquency of the person, who was a minor. The supreme court, in addressing the issue of whether the additional counts should have been dismissed, held that there was nothing in the Illinois statutes which prevented the State from charging the defendants with the additional offenses, even though they were based on the same act and were known to the prosecution at the time the first indictment was brought. In view of the court's holding in *Miller*, we find no error in adding the two charges of aggravated battery prior to the second trial.

Defendant's second issue is whether the trial court erred in denying the defendant's motion for substitution of judge. After the defendant's first trial ended in a mistrial, the State and the defendant entered into a plea agreement which was submitted to the trial judge for his approval on December 26, 1979. However, because the agreement failed to provide for a sentence of imprisonment, the trial court refused to concur in the agreement. An immediate oral motion for a substitution of judge was then denied. On March 11, 1980, just prior to the beginning of the second trial, the defendant filed a written motion for substitution of judge. The judge heard arguments by counsel and denied the motion.

Section 114—5(c) of the Criminal Code reads in pertinent part:

"[A]ny defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion a hearing shall be conducted as soon as possible after its filing by a judge not named in the motion." (Ill. Rev. Stat. 1979, ch. 38, par. 114—5(c).)

Defendant claims that because the hearing on the motion in the case at bar was heard by the trial judge and not another judge, the provisions of section 114—5(c) were violated and he did not receive a fair trial.

The problem with the defendant's argument is that there is no evidence that the defendant moved for a substitution of judge under section 114—5(c). The oral motion for substitution did not refer to this section nor did the defendant request that another judge conduct the hearing on the motion. Neither did the defendant's written motion refer to this section or request that another judge conduct the hearing. Therefore, we do not believe defendant brought these motions under section 114—5(c) and any argument pertaining to that section is waived.

We believe that defendant's motion was brought pursuant to section 114—5(a), which reads in pertinent part:

"Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further but shall transfer it to another judge not named in the motion." Ill. Rev. Stat. 1979, ch. 38, par. 114—5(a).

It is clear that the defendant did not move for a substitution of judge within 10 days after the cause had been placed on the trial judge's call. Thus, he was not entitled to a substitution as of right. Therefore, for the defendant to prevail on this point, he must show actual prejudice on the part of the trial judge. We do not believe he has done so.

■■ The defendant claims the judge was prejudiced against him because the judge refused to accept the plea agreement. We believe this is insufficient to establish prejudice. In denying the defendant's motion for substitution, the trial judge emphasized that he did not know whether or not the defendant had committed the crime. The trial judge stated that he rejected the plea agreement solely because no matter who committed the crime, the crime was serious enough to warrant a term of imprisonment. The defendant has presented no evidence to rebut this statement nor does he present any other evidence of prejudice.

■■ Further, the defendant did not make his motion for substitution until after the judge had made substantive rulings against the defendant. Thus, his motion was not timely. (*People v. Graves* (1977), 54 Ill. App. 3d 1027,

370 N.E.2d 1219.) For these reasons, we believe there was no error in the trial judge's denying the defendant's motion for substitution of judge.

■■ Defendant's third issue is whether the trial court erred in denying the defendant's motion to have the complaining witness hypnotized. Prior to his first trial, defendant made a written motion requesting the court to order that Nickel be hypnotized. After argument, the motion was denied. Prior to the second trial the motion was renewed and denied. Defendant contends that hypnosis would have improved the defendant's memory regarding his identification of his assailant. Therefore, defendant argues, denying the motion was an abuse of the trial court's discretion and denied him due process. We find no merit in the defendant's argument.

Hypnosis is not specifically covered in the Illinois discovery rules. However, Supreme Court Rule 412(h) (Ill. Rev. Stat. 1979, ch. 110A, par. 412(h)) gives the trial court a certain amount of discretion to order discovery not otherwise specifically covered by the discovery rules. This discretion has a very limited scope, and we see no abuse of this discretion in failing to order Nickel to be hypnotized. Defendant can cite no precedent of a court ordering a victim to be hypnotized and, considering the doubts still existent concerning the accuracy and very process of hypnotism, we can find no reason why it should have been ordered in the instant case.

Defendant's reliance on *People v. Smrekar* (1979), 68 Ill. App. 3d 379, 385 N.E.2d 848, and *People v. Kester* (1979), 78 Ill. App. 3d 902, 397 N.E.2d 888, is misplaced. In *Smrekar* the issue was whether a victim was competent to testify to an identification that had been facilitated by hypnosis. In *Kester* the court ruled the testimony of a hypnotist as to what a witness said under hypnosis was admissible. Neither case addresses the issue of whether the trial court can compel a victim to undergo hypnosis.

Defendant's fourth issue is whether or not the trial court erred in two rulings regarding evidence of the victim's identification of the defendant as his assailant. The first ruling dealt with the trial court's restriction of the defendant's cross-examination of Nickel. At the second trial Nickel testified to his stabbing and stated that when he opened the door he was stabbed by one man—whom he identified as the defendant—and saw another man about seven feet away. He did not testify any further about the second man on direct examination. On cross-examination, defense counsel sought to question Nickel as to whether or not, despite having said he could not identify the second man, he chose a photograph which he identified as the second man. Counsel's express purpose was to impeach the victim's ability to identify the defendant from a photograph array. The State's objection was sustained.

■■ ■ The reception of evidence collateral to an issue in a case and intended to affect the credibility of a witness rests usually within the

discretion of the trial court. (*People v. Bruce* (1975), 32 Ill. App. 3d 404, 336 N.E.2d 354.) Absent an abuse of discretion, the trial court's decision will not be disturbed. Despite defendant's contention that impeachment of Nickel's identification of the second man was directly relevant to the case at bar, we believe it was only collateral. Defendant contends that doubt created about one identification made by a photograph casts doubt upon any other identification made by a photograph. Therefore, defendant argues, since Nickel identified the defendant by a photograph, his misidentification of the second man by a photograph is relevant to his identification of the defendant. The problem with the defendant's argument is that defendant has not shown that Nickel misidentified the second man. If the defendant had proved a misidentification, then the misidentification would be admissible as impeaching evidence. However, such is not the situation in the instant case. In the instant case, all that happened was that some doubt was raised concerning Nickel's identification of the second man. It was not enough to cast doubt upon Nickel's ability to identify the defendant as his assailant. Therefore, the doubts concerning Nickel's identification of the second man were a collateral matter, and the trial judge did not abuse his discretion in refusing to allow cross-examination on the subject.

■■■ The defendant's other issue regarding the trial court's evidentiary rulings concerns Nickel's identification of the defendant by a photograph. The court allowed Kevin Doyle, a bartender, to testify that the photograph from which Nickel was able to identify the defendant showed what the defendant looked like on the night of the occurrence. The photograph had been taken approximately 18 months earlier. The defendant claims that Doyle should not have been allowed to testify that the photograph looked like the defendant. Therefore, defendant claims he was denied a fair trial. We see no merit in defendant's claim. There was a proper foundation for Doyle's testimony. The proper foundation required for the introduction of a photograph into evidence is that the witness must have personal knowledge of the person in question and testify that the photograph accurately portrays him. Doyle testified that he had seen the defendant minutes before the attack and that the photograph portrayed him as he looked at that time. We see nothing objectionable in this testimony.

■■ Defendant's final issue is whether or not the prosecutor's closing argument was so inflammatory and prejudicial that it denied the defendant due process and a fair trial. Defendant alleges numerous statements were impermissible. The first statement we deal with is the prosecutor's statement that "There has [*sic*] been some unexpected delays, and sometimes its been hard to follow. * * * Because so many of the delays were unexpected, because generally these delays work to the

prejudice of the State, the State's witnesses beginning first, I am going to have to review some of the high points." Defense counsel objected, the jury was removed and the objection was discussed. The prosecutor explained that what he meant by prejudice and intended to explain to the jury was that since the State's witnesses testified first, he would have to cover their testimony in greater detail than later witnesses. The jury was brought back in and the judge told the jury that there had been no prejudice due to the delays and that the jury should ignore the statement. While we believe the prosecutor's remarks were improper, we believe the prompt objection, followed by the trial court's instruction that the jury disregard the comment, was sufficient to cure the error.

■■ Later in his argument the prosecutor, in commenting on the defendant's witnesses, stated "Now what does his father, Mr. Ludtke, have to say about the case. He doesn't know where his son was on December 9, 1977. No alibi testimony from him." Defendant claims this remark suggested that the burden was on the defendant to prove his innocence and directed the attention of the jury to the defendant's failure to testify. We find no such improper suggestion. The remark, when taken in context, referred to the main issue at trial, the assailant's identity. We see nothing that suggests the burden of proof was on the defendant or which draws attention to the defendant's failure to testify.

Defendant also claims he was denied a fair trial by the prosecutor's comments on the State's burden of proof beyond a reasonable doubt. The prosecutor said, "Mr. McNamara [the defense counsel] talks about burden of proof beyond all reasonable doubt. Well it's not beyond all doubt; it's beyond a reasonable doubt. You, under the rules of law, should convict even if you have doubts, so long as you are convinced beyond a reasonable doubt." The defendant claims that the prosecutor was defining reasonable doubt and this was improper and denied the defendant a fair trial. We disagree. The prosecutor was responding to defense counsel's argument, and we see no attempt to define the term reasonable doubt.

Defendant makes several other allegations of improper statements by the prosecutor in his closing argument. We find no merit in any of them and do not discuss them separately. In summation, while some of the prosecutor's statements were improper, we find that the statements, individually and collectively, do not constitute reversible error.

For the abovementioned reasons, the judgment of conviction of the circuit court of Will County is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.