THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PETER ALLISON, Defendant-Appellant.

Fifth District   No. 81—601

Opinion filed July 21, 1983.

Randy E. Blue and Kent Bartholomew Mann, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

1040

William P. Strange, State's Attorney, of Lawrenceville (Stephen E. Norris and Karen L. Stallman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant, Peter Allison, was charged by information with committing indecent liberties with a child by performing an act of lewd touching in violation of section 11—4(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(3)). Following a bench trial in the circuit court of Lawrence County, defendant was convicted and sentenced. On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt, that items seized from his trailer home were not sufficiently described in the search warrant and that certain State's exhibits were improperly admitted into evidence.

The victim and complaining witness in this case was six years old at the time of the incident in question. He testified that on April 17, 1980, he saw defendant talking to a group of boys outside of defendant's trailer home in Lawrenceville. After defendant finished talking to the boys, complainant and defendant went into the trailer where they were alone. Complainant testified that he had recognized defendant from the township swimming pool the previous summer.

Complainant entered the kitchen of the trailer and found a label gun. He made a label with his name which he put on his jacket. Defendant also was in the kitchen for a few minutes until he went into the front room and lay down. Complainant then went into the bathroom and defendant brought some books from a room with a curtain door. When complainant returned, defendant grabbed him "between the legs" and was told to stop by complainant.

After this incident, defendant showed complainant books which had "pictures of naked ladies." Defendant then grabbed him again between the legs and "fooled." Complainant told defendant to stop and again he complied. Following this second touching, defendant asked complainant if he had ever seen his sister "without any clothes on," to which he replied, "No." Complainant then left defendant's trailer and rode his bicycle home.

Complainant's mother testified that on the day in question she was concerned because her son did not return home until late. She stated that she noticed that when he returned he had a label with his name taped to his jacket. She further testified that her son always told the truth though he sometimes exaggerated.

Complainant's father testified that his son told him that defendant showed him some "nasty books." He stated that his son exaggerated

to his brothers and sisters but "wouldn't exaggerate about something like that." Complainant's father admitted that he used the word "magazines" in his search warrant affidavit and the word "book" at the preliminary hearing.

Defendant testified in his own behalf that on April 17, 1980, he invited complainant into his trailer home and offered him a glass of soda. As he was pouring the soda, complainant went into the living room and began looking at a book entitled, "Show Me." Defendant testified that he told complainant that he was too young to look at that book and then took it away from him and brought it into a second bedroom which had a curtain door. Complainant then followed defendant into this room and defendant suggested that they both return to the front room.

Defendant testified that on April 19, 1980, complainant came to the door of his trailer and asked to see the book he had looked at previously. Defendant stated that he refused to show him the book and heard complainant say as he was leaving that, "I'm going to tell my father."

On cross-examination, defendant stated that he had no sexual contact with complainant, and that such contact was repugnant to him. He further testified that he did not collect "kiddie pornography" and did not have any order blanks for such material in his trailer.

Defendant's wife testified that at the time of her husband's arrest there were no advertisements for child pornography in the trailer. In addition, she corroborated defendant's testimony that complainant asked to see more of the book "Show Me" on April 19, 1980.

The State offered into evidence State's exhibits Nos. 5, 6 and 7 consisting of advertising for child pornographic material which had been seized from defendant's trailer pursuant to a search warrant. The trial court admitted the State's exhibits over the objection of defendant for the limited purpose of impeachment.

■ Defendant's first contention on appeal is that he was not proved guilty beyond a reasonable doubt of the offense of indecent liberties with a child. It is well settled that where a conviction of this offense depends on the testimony of the complaining witness, and defendant denies the charge, there must be substantial corroboration of his testimony, or the testimony must be clear and convincing. The testimony of a complaining witness, however, need not be crystal clear and perfect as far as memory is concerned in order for his testimony to be clear and convincing. *People v. Boyd* (1980), 87 Ill. 3d 978, 982, 409 N.E.2d 392, 397.

Defendant contends that the testimony of the complaining witness

in the instant case was neither clear and convincing nor substantially corroborated. In support of this contention, defendant asserts that complainant was only seven years old when he testified, and he had a tendency to exaggerate. Defendant also questions the validity of complainant's testimony because complainant did not immediately report the incident. Defendant further contends that complainant's testimony concerning the lewd fondling was insufficiently vague and did not establish that he intended to arouse sexual desires as required by statute.

■ The issue of a witness' credibility in a prosecution for indecent liberties with a child is to be determined by the trier of fact. (*People v. Boyd* (1980), 87 Ill. 3d 978, 409 N.E.2d 392.) Any shortcoming in the victim's testimony does not destroy his credibility but merely goes to the weight to be afforded to the testimony by the trier of fact. (*People v. Britton* (1980), 80 Ill. App. 3d 482, 400 N.E.2d 33.) In an appeal of a bench-tried case, great weight must be given to the trial court's determination concerning the credibility of the witnesses. *People v. Stamm* (1979), 68 Ill. App. 3d 177, 385 N.E.2d 839.

In the instant case, the trial court, in finding defendant guilty, stated that, "I have a tendency to believe the child," and noted that there did not seem to be any variance in the complainant's testimony on direct and cross-examination. Although both of complainant's parents testified that their son had exaggerated in the past, his exaggeration apparently was limited to incidents involving his brothers and sisters and did not amount to a tendency to exaggerate as defendant asserts. Furthermore, complainant's father testified that his son would not exaggerate about an incident such as the one at issue here.

■ Defendant also maintains that complainant's delay in reporting the incident casts doubt upon the credibility of his testimony. According to the evidence, the incident occurred early in the evening of April 17, 1980, but complainant did not notify his father until the morning of April 19, 1980. This delay, however, might be attributed to a number of factors including complainant's embarrassment and guilt. We do not believe that such a relatively short delay under the circumstances undermines the credibility of complainant's testimony.

■ Regarding the lewd touching, complainant testified that defendant "grabbed me between the legs and fooled." Although defendant maintains that this contact could have been a "friendly squeeze of the knee or slap of the thigh," the trial court noted that the fact that complainant told defendant to stop touching him was an indication that this contact was not normal. Defendant additionally maintains that the evidence does not clearly establish whether defend-

ant touched complainant's genitals. We note, however, that physical contact with the victim's genitals is not essential to support a conviction of indecent liberties with a child. *People v. Thingvold* (1978), 66 Ill. App. 3d 1002, 384 N.E.2d 489.

Defendant further argues that the State did not present any evidence that any lewd fondling or touching was done with the intent to arouse or satisfy the sexual desires of either the child or defendant or both. (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(3).) Such intent, however, may be established by circumstantial evidence. (*People v. Collins* (1978), 63 Ill. App. 3d 843, 380 N.E.2d 858.) In the present case, there was testimony from complainant that defendant asked him if he had seen his sister "without any clothes on" and showed him sexually oriented books. We believe that this testimony, together with evidence that defendant touched complainant in the genital area suggests that the requisite intent was present.

After reviewing the record, we are convinced that the trial court was mindful of its duties in evaluating the evidence according to the appropriate standards. Consequently, we find defendant's contention that he was not found guilty beyond a reasonable doubt to be without merit.

▪ The second argument advanced by defendant on appeal is that the search warrant issued in this case did not describe the items to be seized with sufficient particularity. The search warrant at issue restricted the search to the small bedroom next to the living room in defendant's trailer home and authorized the seizure of "any and all pornographic magazines or literature which have been used in the commission of and which constitutes evidence of the offense of Indecent Liberties with a child." As a result of the search, several items were seized, including books, magazines, loose pages and order forms for child pornographic material.

A search warrant is not to be issued unless it particularly describes the items to be seized. (*People v. Mertens* (1979), 77 Ill. App. 3d 791, 396 N.E.2d 595.) The purpose of this requirement is to prevent the use of general warrants, which would give police broad discretion as to what they may search and seize. *People v. Fragoso* (1979), 68 Ill. App. 3d 428, 386 N.E.2d 409.

▪ Defendant contends that the search warrant was unconstitutional because it did not define what was pornographic, and did not limit the discretion of the police officers in determining what was pornographic. In support of his contention, defendant cites several cases in which broadly worded search warrants were found to be constitutionally defective. In one such case, *Stanford v. Texas* (1965), 379 U.S.

476, 486, 13 L. Ed. 2d 431, 437, 85 S. Ct. 506, 512, the United States Supreme Court held that a search warrant authorizing the seizure of "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party in Texas, and the operations of the Communist Party in Texas" was unconstitutional. In reversing defendant's conviction, the court stated that:

> "the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain." 379 U.S. 476, 485, 13 L. Ed. 2d 431, 437, 85 S. Ct. 506, 511-12.

We believe that *Stanford* is distinguishable from the instant case in that in the case before us the books and other materials were seized because they were used during the commission of a crime, and were evidence of the offense. The seizure of the materials, therefore, was unrelated to the ideas contained in them, and we believe that the degree of particularity in which those items were described need not be as stringent as in *Stanford*.

Similarly, we are not persuaded by defendant's assertion that because the items seized were pornographic a more detailed description of those items was required in the search warrant. In *People v. Kimmel* (1966), 34 Ill. 2d 578, 217 N.E.2d 785, the court reversed a conviction for possession of obscene books where the officers and assistant State's Attorney executing the search warrant treated the warrant as a license for a general search. In that case, the State was authorized to seize "all copies" of four books but the policemen and assistant State's Attorneys seized nearly 1,500 and magazines from over 130 separate titles. The court in *Kimmel* was concerned with the violation of first amendment principles stemming from the use of a sweeping search warrant which was aimed at suppression rather than obtaining evidence. The situation before us is very different in that the pornographic materials were seized for evidence and this seizure did not encroach upon first amendment freedoms. Consequently, we find that the search warrant in the present case adequately described the items which were seized and does not present a basis for reversal.

■ Defendant's third contention is that the trial court erred in admitting certain State's exhibits into evidence. The exhibits at issue include State's exhibits Nos. 5, 6 and 7 which consisted of child sex literature and photographs. The State offered these exhibits for the purpose of impeaching the testimony of the defendant and his wife.

In response to defendant's allegation, the State notes that defend-

ant failed to object to the admission of these exhibits in his post-trial motion and therefore waived this issue. We agree with the State's general statement that defendant's failure to raise an issue in his post-trial motion constitutes a waiver and that issue cannot be urged as a ground for reversal on review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Although we could rest our decision on this basis alone, we have reviewed defendant's contention and find it to be without merit.

Defendant testified on cross-examination that acts of sexual contact engaged in with children were repugnant to him and that no order blanks for "kiddie pornography" were in his trailer. Defendant's wife also testified that no advertisements for pornographic literature involving children were in the trailer on the date defendant was arrested. To impeach the testimony of defendant and his wife, the State introduced exhibits Nos. 5, 6 and 7 which consisted of material seized from defendant's trailer on April 21, 1980. The trial court admitted the exhibits for the limited purpose of impeaching their testimony over defendant's objection on grounds of relevancy.

Defendant contends that the admission of these exhibits was improper because cross-examination should be limited to matters raised on direct examination. Defendant further maintains that because his possession of the material was not at issue, the introduction of the exhibits constituted improper collateral impeachment.

■ When defendant testified in his own behalf at trial, he put his credibility in issue and opened such to possible impeachment. (*People v. Spears* (1967), 83 Ill. App. 2d 18, 226 N.E.2d 67.) Cross-examination to impeach is not limited to matters brought out in direct examination. (*People v. Davis* (1979), 70 Ill. App. 3d 454, 388 N.E.2d 887.) Furthermore, the reception of evidence collateral to an issue in a case and intended to affect the credibility of a witness rests within the discretion of the trial court, which will not be disturbed absent an abuse of discretion. (*People v. Renslow* (1981), 98 Ill. App. 3d 288, 423 N.E.2d 1360.) We cannot say that the trial court abused its discretion in admitting the State's exhibits, which contradicted defendant's testimony that advertisements for "kiddie pornography" were not present in his trailer.

Defendant further contends that the trial court improperly admitted State's exhibits Nos. 5, 6 and 7 as substantive evidence. After the State offered the exhibits for impeachment purposes, the trial court stated, "All right, they'll be admitted for that limited purpose." Although the court later noted the existence of sexual literature in defendant's trailer when it found him guilty, there is no indication in

the record that the trial court was referring to State's exhibits Nos. 5, 6 and 7. This court has noted that a judge is presumed not to give improper weight or consideration to evidence. (*People v. Stamm* (1979), 68 Ill. App. 3d 177, 385 N.E.2d 839.) After examining the record, we have found no evidence which rebuts this presumption and suggests that the court improperly considered the State's impeachment exhibits.

In addition to State's exhibits Nos. 5, 6 and 7, defendant contends that the trial court erred in admitting State's exhibit No. 1 into evidence. This exhibit which defendant also objected to on the grounds of relevancy consisted of nine books and magazines seized from defendant's trailer.

At trial, complainant testified that defendant showed him books "with pictures of naked ladies." He further testified that defendant took the books from a room with a curtain door, which was the room from which the items in exhibit No. 1 were seized. We believe, therefore, that exhibit No. 1 was relevant in that it corroborated complainant's testimony and supported the trial court's finding that physical contact was sexually motivated. Accordingly, we find that the trial court properly admitted exhibit No. 1 into evidence.

For the foregoing reasons, defendant's conviction for the offense of indecent liberties with a child is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.