THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN L. WILLIAMS, Defendant-Appellant.

First District (1st Division)   No. 83—733

Opinion filed March 11, 1985.

598

James J. Doherty, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, David A. Cuomo and Robert A. Alvarado, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, defendant John L. Williams was convicted of three counts of murder and aggravated arson. Defendant was sentenced to a term of natural life imprisonment for murder. On appeal, defendant argues: (1) he was not proved guilty beyond a reasonable doubt; (2) the trial court erred in not allowing defendant to introduce into evidence the alleged confession of Michael Cuniff; (3) the trial court erred in not granting defendant a continuance to try to locate

Cuniff; (4) the trial court erred in quashing defendant's subpoena for Cuniff's psychiatric records; (5) the trial court's finding that police did not tape conversations between themselves and two witnesses was against the manifest weight of the evidence and denied defendant access to important discovery; (6) the trial court erred in excluding testimony as to the possible destruction of evidence; (7) the trial court erred in restricting the cross-examination of David Saunders; (8) the trial court erred in admitting evidence which was unduly prejudicial; (9) defendant was denied a fair trial through improper argument by the prosecutor; (10) the trial court erred in entering convictions on three counts of murder based on a single act of aggravated arson; (11) defendant's conviction for aggravated arson must be vacated; and (12) the trial court erred in imposing a sentence of natural life imprisonment.

We affirm.

John DeJonge testified he considered defendant to be "like a brother, one of my good friends." On the evening of January 20, 1981, the witness was sitting in a car with defendant and a mutual friend, Wayne Mills. Defendant stated "he wanted to go light a fire." The three went to a complex of apartments in Hanover Park. Defendant had previously lived in the complex. They cruised around the parking lot and left. They left because there were about 50 people in the lot. They returned to the complex about 15 minutes later. The lot was empty of pedestrians. They parked the car next to a building that eventually burned. Defendant got out of the car and went into the building. He was in the building for about 30 seconds. Defendant returned to the car. They left and passed the building about 20 minutes later. At that time, the witness saw thick black smoke pour out of the windows. Defendant was asked whether he started the fire and defendant replied, "Yeah." Later, defendant told the witness not to talk about the fire because defendant "did not want to get blamed for something he didn't do."

On cross-examination, the witness stated he knew a person who lived in the complex who had previously lived with defendant. The witness knew that person sold marijuana. The witness denied they went to the complex to buy marijuana. The witness denied telling either a policeman or an attorney that they went to the complex to buy marijuana.

Defendant did not carry a container or anything else when he entered the building. Defendant did not hurry when he returned from the building to the car. The witness had previously heard defendant say he had robbed a bank. To the best of the witness' knowledge,

defendant had never robbed a bank.

Wayne Mills testified both defendant and John DeJonge were his friends. He, DeJonge and defendant were driving in the witness' car on January 20, 1981. They went to a gas station. The witness believed defendant pumped gas into the car and went inside the station to pay for the gas. The witness did not see defendant obtain a container. The witness heard defendant state, "Let's go smoke out some Spics." The witness stated defendant said, "Come on, let's go burn a building, torch a fire or something like that!" They drove to the apartment complex, and parked the car about 10 feet from the door. Defendant went into the building and stayed less than a minute. Defendant returned to the car and said, "Let's go."

The next day, the witness asked defendant whether he was bothered that three people died in the fire. The defendant shrugged his shoulders and said that the only thing he regretted was that he had not had the chance to have sex with the teenage girl who died in the fire. The witness believed a large number of Latinos lived in the complex.

On cross-examination, the witness stated the defendant did not carry a container into or out of the building. Defendant did not smell like gasoline. The witness drank beer and smoked marijuana on the evening in question.

David Saunders testified he was a friend of defendant. At about 10 a.m. on January 21, 1981, defendant, Wayne Mills and John DeJonge came to his home. Defendant told the witness there was something defendant wanted to show him. They drove to the burned building. Defendant pointed to the building and stated, "I did that." The witness expressed his disbelief and defendant insisted that it was true. Defendant, Mills and DeJonge made jokes about defendant's being a baby killer. Later, defendant gave the witness a newspaper article about the fire.

About a week later, the witness reported what he had heard to the Streamwood police department. The witness received several telephone calls from defendant while defendant was in jail. Defendant threatened the witness and told the witness not to incriminate him.

On cross-examination, the witness stated he had a case pending against him in Streamwood when he reported the conversations he heard. However, the witness denied he called to help himself in the case against him. He did not believe he could have been sent to prison for the charges against him.

On redirect examination, the witness stated the charge pending against him was criminal damage to property. The witness pleaded

guilty, paid a restitution of $75 and was placed on supervision for a year. The witness stated he talked to defendant's mother and did not give her correct information because he did not want her to know he informed on defendant.

On recross, the witness stated he lied to defendant, saying he had not informed on him. Defendant told the witness he thought the witness was "messing with" defendant's girlfriend. Defendant threatened the witness with violence if defendant found it to be true.

Saunders, Mills and DeJonge each testified defendant told them he started the fire by throwing a lighted rag into a storage room.

Rojald Russell testified he is a fire investigator. He was hired to determine the cause and origin of the instant fire. He inspected the premises and concluded the fire was deliberately set. He believed between one and five gallons of a liquid accelerant was used. Accelerant was placed in the lower level storage area, in hallways and stairways. The witness believed the fire was started in the ground level storage room. The witness found the charred remains of a cardboard box with remnants of charred rags scattered in and around it. The box was about four or five feet from the outside door of the storage room.

Hanover Park police officer Vern Koenen testified he investigated the instant fire and interrogated defendant. Defendant denied any connection with the fire. He admitted being in the parking lot of the complex. He liked to watch the Hispanics "with their lights and candles *** their heads turn like a bunch of cows watching you go through." Defendant stated that he did not particularly dislike Hispanics "but they could all go back where they came from."

Carpentersville police officer Robert Wiggins testified he executed an arrest warrant on defendant. The officer went to the residence where defendant's girlfriend was babysitting. The officer found defendant hiding under a baby's crib.

John DeJonge was recalled as a court witness. He testified he previously talked to defense attorneys. He told the attorneys that defendant had previously said he committed crimes he had not in fact committed. He also told the attorneys he, defendant and Mills were at the complex to buy marijuana. Finally, the witness stated he understood the term "burn some Spics" meant to rob people. He had never heard the term "smoke some Spics."

Diane DeJonge, John DeJonge's mother, testified defendant lived in their home for a few months. Defendant often said he had committed or was about to commit crimes. The witness never knew defendant to commit the crimes he mentioned. Defendant's sister and mother also testified to instances where defendant talked about

crimes which he did not commit.

Daniel Machowiak testified he was at a party on the evening of the fire. Michael Cuniff was at the party. Cuniff made homosexual overtures to the guests. The witness and James Gustafson left to get gasoline and beer. At the request of the host, they took Cuniff with them. Cuniff rode in the back of a pickup truck. After they put gasoline in the truck, they dropped Cuniff off about two or three miles from the complex in Hanover Park. Then they got some beer for the party. On the way back to the party, about one-half hour later, they noticed Cuniff walking within a block of the complex. They picked him up, and Cuniff asked to be taken to a pool hall. When they passed the complex, Cuniff banged on the roof of the truck and yelled, "Fire." The witness did not see any fire at the time. After they dropped Cuniff at the pool hall, they returned to the party. As they passed the complex, they saw the building on fire. They related the situation to the people at the party. The police were called. The witness and Gustafson went to the police station and made reports.

On cross-examination, the witness testified his report indicated Cuniff had said "Look at the fire" as they passed the complex.

James Gustafson testified Cuniff was "acting like he was drunk, and was snorting glue, and was on drugs definitely." When they picked him up in the truck, Cuniff was "out of it. He was walking sideways and everything."

On cross-examination, the witness stated he had heard of Cuniff about a year before the instant fire. He "heard his wife making statements about him in court. *** He started a fire into [sic] an apartment building in Hanover Park." The statement the witness made to police immediately after the fire did not mention any statement made by Cuniff.

Leo Siciliano, a Hanover Park police officer, testified he saw Michael Cuniff on the night of the fire. He had been arrested on outstanding warrants. The witness noticed Cuniff's clothing "had a smell of some type of flammable substance to them."

On cross-examination, Siciliano stated he had previous contact with Cuniff. Cuniff always smelled of a flammable substance, namely, glue. Cuniff's clothes were analyzed. When the lab report came back, Cuniff was still in custody. He was never charged with the instant arson.

Susan Jones testified that on January 30, 1981, she was babysitting. Defendant was her boyfriend at the time. She took defendant with her to her babysitting job. Defendant went to get ice cream.

Policemen came to the door while defendant was out. As soon as defendant returned to the apartment, he was arrested. David Saunders asked her on dates several times. She called Saunders the day after defendant was arrested. Saunders asked her for a date on that occasion.

Lucretia Ehrke testified that at the time of the fire, she lived next to the building that burned. She saw three teenage boys walk by her second-floor window. Just then she heard an explosion. The boys kept walking as if they did not hear the explosion. At that time she saw the fire at the complex.

She saw the teenagers about 20 minutes later. One of the boys had changed from blue jeans to white pants. She could not really see the boys' faces. Policemen showed her pictures, but she could not identify the boys she had seen. She stated she never saw defendant before.

■ Initially, defendant contends the evidence at trial did not establish his guilt beyond a reasonable doubt.

It is the function of the jury to determine whether the prosecution has met its burden of proof, and a reviewing court will reverse a guilty verdict only if the evidence is so improbable, impossible, or unsatisfactory as to raise a reasonable doubt as to the guilt of the defendant. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 829, 447 N.E.2d 1029.) The speculation that another person committed the offense does not necessarily raise a reasonable doubt as to the guilt of the accused even if that speculation is supported by some circumstantial evidence. See *People v. Despain* (1981), 102 Ill. App. 3d 1063, 1067-68, 430 N.E.2d 228.

In the case at bar, the jury heard of repeated admissions defendant made that he started the fire. Those admissions were corroborated by the testimony of John DeJonge and Wayne Mills, which indicated defendant's intention to commit the arson before the fire was started and which placed defendant at the exact place of origin of the fire at the time the fire began. Furthermore, the testimony of Ronald Russell that he found the charred remains of a cardboard box with the remnants of rags strewn about corroborated defendant's statements that he began the fire by throwing a lighted rag in a box in the storage room.

Defendant stresses various inconsistencies in the testimony, that defendant could not have committed the crime in the 30 seconds DeJonge and Mills testified defendant was in the building, and that defendant did not carry a container into or out of the building. It is important to note that minor inconsistencies in the testimony go

only to the weight of the evidence and not to its sufficiency. (*People v. Spencer* (1983), 119 Ill. App. 3d 971, 980, 457 N.E.2d 473.) Furthermore, the jury is not required to give all testimony equal weight and may place greater reliance on certain testimony. (See *People v. McElroy* (1980), 81 Ill. App. 3d 1067, 1071, 401 N.E.2d 1069.) Therefore, we conclude that evaluating the evidence presented to the jury could have properly found defendant guilty beyond a reasonable doubt.

■ Next, defendant argues the trial court erred in granting the State's motion *in limine* excluding all statements made by Michael Cuniff.

During the hearing on the State's motion defense counsel stated, "We anticipate introducing at trial *** a statement from one Michael Cuniff made to one James Gustafson that he in fact had started the fire ***." After the trial court granted the State's motion, defense counsel requested to make an offer of proof regarding the testimony of Gustafson. The prosecutor suggested it would be more appropriate for the offer to be made during trial. Defense counsel indicated that he would make the offer at trial. However, no such offer was presented. A police report indicated an anonymous caller stated, "He had just picked up Michael J. Cuniff hitchhiking on Rt. 20, and in their conversation Michael J. Cuniff stated he had just attempted to start a fire at [the complex] but didn't know if he was [*sic*] successful." Another police report in the record indicates a high school student told the police officer that Laura Gustafson told the student that her brother, Jim Gustafson, had picked up a hitchhiker who admitted starting the fire.

Initially, we note that the record in the case at bar does not positively establish there was any admission made by Michael Cuniff. The only indication of any incriminating statement made by Cuniff was the declaration made by defense counsel and two unsubstantiated police reports, neither of which even quoted the person to whom the admission was allegedly made. Furthermore, defense counsel's assertion that Cuniff confessed to Gustafson is refuted by the fact that Gustafson's report to the police, made immediately after his contact with Cuniff, made absolutely no mention of any statement by Cuniff. Finally, defense counsel failed to make his promised offer of proof when Gustafson testified. Therefore, there was not any threshold showing that a "confession" ever existed. In any event, we find that even assuming Cuniff made an admission to Gustafson, the statement is inadmissible under the facts of the instant case.

The Illinois Supreme Court has declared "[t]he general rule is that a third party's extrajudicial declarations, not made under oath, that he committed a crime are purely hearsay and are inadmissible, even though they are declarations against interest." (*People v. Tate* (1981), 87 Ill. 2d 134, 143, 429 N.E.2d 470.) The court in *Tate*, citing *Chambers v. Mississippi* (1973), 410 U.S. 284, 301-02, 35 L. Ed. 2d 297, 312, 93 S. Ct. 1038, 1048-49, indicated that such a statement may be admissible if the following four indices of trustworthiness are present: (1) the declaration was spontaneous and occurred shortly after the crime; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and a declaration against interest; and (4) there was an adequate opportunity for cross-examination of the declarant. (*People v. Tate* (1981), 87 Ill. 2d 134, 143-44.) In *Tate*, the court held an extrajudicial statement was inadmissible even though the declarant was at trial and was available for cross-examination, because other indices of reliability were not present.

In *People v. Bonilla* (1983), 117 Ill. App. 3d 1041, 453 N.E.2d 1322, we held that a confession made to police by a party other than defendant was inadmissible. In *Bonilla*, defendant was convicted of murder and arson. A resident of the building came out of the building smelling of smoke and in possession of matches. We held that the declarant's confession to police was inadmissible because the statement was not made to a close acquaintance, the declarant was not at court for cross-examination, and the statement was corroborated "only [by] the flimsiest circumstances." 117 Ill. App. 3d 1041, 1043.

Similarly, in the case at bar, Cuniff's alleged admission was made to a person who was not a close acquaintance of his, he was not available for cross-examination, and his statement lacks substantial corroboration. The only facts that corroborate the confession by Cuniff are that he was near the scene of the crime at approximately the time the crime was committed, and he noticed the existence of the fire when his companions did not. Therefore, we conclude the trial court did not err in granting the State's motion to exclude any hearsay declarations made by Michael Cuniff.

■ Next, defendant argues the trial court erred in denying his request for a continuance "of several months" to locate Cuniff after the court held Cuniff's hearsay declarations were inadmissible.

The decision to grant or deny a motion for a continuance is left to the discretion of the trial court. (*People v. Bryant* (1983), 115 Ill. App. 3d 215, 221, 450 N.E.2d 744.) The trial court can look to

defendant's diligence or lack thereof in assessing his motion for a continuance. *People v. Olbrot* (1982), 106 Ill. App. 3d 367, 374, 435 N.E.2d 1242.

In the case at bar, the defendant had submitted the name of Michael Cuniff as a potential witness almost a year prior to trial. Nine months after defendant submitted his list of potential witnesses, defendant moved for a continuance to find Cuniff. The trial court granted defendant a continuance of approximately one month. After a ruling on the State's motion *in limine*, the trial court denied defendant's motion for a continuance because defendant had a reasonable opportunity to find Cuniff and because the case had been pending for more than a year. Under the circumstances in the case at bar, we conclude the trial court did not abuse its discretion in denying defendant's second motion for a continuance.

■ Next, defendant argues the trial court erred in quashing defendant's *subpoena duces tecum* for Michael Cuniff's treatment records from Elgin Mental Health Center.

Mental health records are privileged against judicial disclosure. (Ill. Rev. Stat. 1981, ch. 91½, par. 810.) The statute further states that any interested party may request an *in camera* inspection of the records. (Ill. Rev. Stat. 1981, ch. 91½, par. 810(b).) There is no indication defendant requested such a confidential inspection of the records.

Courts have determined that the privilege must yield when the records are necessary for meaningful cross-examination of an important prosecution witness. (See *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105; *People v. Di Maso* (1981), 100 Ill. App. 3d 338, 426 N.E.2d 972.) However, in the case at bar Cuniff was not a prosecution witness. Therefore, there is no conflict between the privilege and the confrontation clause. Furthermore, the record does not show any articulable basis upon which to indicate the records are even relevant to the instant prosecution. There is nothing in the record to verify that defendant's subpoena is anything more than a "fishing expedition," where defendant seeks to disclose confidential and privileged records upon the speculation that they are relevant. Under these circumstances, the trial court did not err in quashing defendant's *subpoena duces tecum*.

■ Next, defendant argues the finding by the trial court that the police did not record their conversations with certain witnesses was against the manifest weight of the evidence and deprived defendant access to important discovery. Defendant filed a motion to dismiss or in the alternative to suppress the testimony of certain witnesses. An

evidentiary hearing was held on defendant's motion.

David Saunders testified he had a discussion with police officers concerning the fire. Officer Koenen asked the witness whether he consented to be tape-recorded. The witness consented, and Officer Siciliano took a tape recorder from his briefcase. Siciliano talked into the recorder, played it back and turned it back on. The witness believed the tape recorder was on throughout the discussion.

On cross-examination, the witness testified he never heard his conversation with the police played back.

John DeJonge testified he had a discussion with Officers Koenen and Siciliano concerning the fire. He talked to them about 15 minutes. Thereafter, the witness' mother was brought into the room. One of the officers asked the witness whether he would repeat his statement so it could be recorded. The officer then took out a tape recorder and placed it on the table in front of the witness.

On cross-examination, the witness stated he never heard the tape played back.

Diane DeJonge, John's mother, testified she was with her son at a police station. He was being questioned by Officers Koenen and Siciliano. One of the officers brought in a tape recorder, and one officer asked whether John would allow the discussion to be recorded. Thereafter, the officer turned on the recorder.

Wayne Mills testified he talked to Officers Koenen and Siciliano about a week after the fire. The witness did not see any tape recorder, and the officers did not mention any tape recorder or that their conversation was being recorded.

Officer Vern Koenen testified he did not tape the interviews with John DeJonge and David Saunders. He had never heard of any such tape recordings and he did not believe any ever existed. Officer Leo Siciliano also testified neither he nor Officer Koenen recorded any of the interviews with Mills, DeJonge or Saunders.

After argument by counsel, the trial court concluded that he was not convinced that recordings were in fact made by the officers. The judge based his decision on the "emphatic" testimony of the officers, the inability of the other witnesses to actually observe the operation of a recording device, and the fact that no witness heard a recording replayed.

The testimony presented to the trial court was conflicting. It is the responsibility of the trial judge as a finder of fact to weigh the credibility of the witnesses and resolve that conflict. (See *People v. Lucien* (1982), 109 Ill. App. 3d 412, 440 N.E.2d 899, *cert. denied* (1983), 459 U.S. 1219, 75 L. Ed. 459, 103 S. Ct. 1223.) In the case at

bar, we cannot say the finding made by the trial judge was contrary to the manifest weight of the evidence in light of the unequivocal testimony of Officers Koenen and Siciliano.

Furthermore, defendant had not established how he would have been prejudiced by any failure of the police to keep and tender any recordings of the interviews. Defendant has not shown any significant inconsistency between the testimony of the police officers and the other witnesses with regard to the interviews involved. Therefore, the trial court did not err in finding that recordings of the interviews were not made.

■ Next, defendant argues the trial court erred in granting the State's motion *in limine* to exclude testimony as to the existence of tape recordings.

The admission of evidence to impeach the credibility of a witness on a collateral issue is within the discretion of the trial court. (*People v. Renslow* (1981), 98 Ill. App. 3d 288, 293-94, 423 N.E.2d 1360.) A reviewing court will not disturb the decision of the trial court unless there is an abuse of discretion. *People v. Allison* (1983), 115 Ill. App. 3d 1038, 452 N.E.2d 148.

In the case at bar, defendant has not shown the primary relevance of the existence of the recordings. Defendant has not shown any significant variance between the testimony of the officers and the interviewed witnesses. Therefore, any impeachment regarding the existence of recordings would be collateral. We find that the trial court did not abuse its discretion in excluding the proffered testimony.

■ Next, defendant argues the trial court erred in restricting the cross-examination of David Saunders with regard to the charges pending against him in Streamwood. Defendant complains that he was restricted in questioning Saunders about whether he could have received a year's imprisonment for the criminal-damage-to-property charge and his refusal to talk to defense counsel prior to trial.

Defendant did question Saunders about the potential punishment for the charge against him. Saunders simply answered he did not believe he could be sent to prison for the offense. We believe the jury was adequately informed of the charges against Saunders and any bias Saunders may have had as a result of those charges. Furthermore, prosecution witnesses are not obligated to talk to defense counsel prior to trial, and it is not an abuse of discretion to exclude cross-examination regarding a witness' refusal to talk to defense counsel. (*People v. Peter* (1973), 55 Ill. 2d 443, 451, 303 N.E.2d 398, *cert. denied* (1974), 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627.) We find no error here.

■ Next, defendant argues the trial court erred in allowing unduly prejudicial evidence against defendant. Specifically, defendant complains of the racist remarks made by defendant about Hispanics, his statements that he only regretted not being able to have had sex with the teenage girl before she died, and the references to the "baby-killer" jokes.

We believe these matters were relevant to the issues at bar, and were properly before the jury. The racist references establish a possible motive for defendant's commission of the crime and will not be rendered inadmissible simply because they are prejudicial. (See *People v. Foster* (1979), 76 Ill. 2d 365, 374, 392 N.E.2d 6.) Furthermore, defendant's statements about the teenage girl and his reaction to the "baby-killer" jokes constitute probative admissions and as such were admissible. See *People v. Alexander* (1982), 93 Ill. 2d 73, 79, 442 N.E.2d 887.

Next, defendant argues he was prejudiced by improper comments by the prosecutors during closing argument. Defendant cites numerous instances of alleged improper statements. However, we note that defendant failed to object to all but two of the statements of which he now complains. Therefore, the alleged errors are waived for appellate review. (*People v. Bartall* (1983), 98 Ill. 2d 294, 317, 456 N.E.2d 59.) Furthermore, the trial court sustained defendant's objections to the remaining allegedly objectionable statements. Because the trial court sustained defendant's objections and because the court instructed the jury that closing arguments do not constitute evidence, we find that defendant was not substantially prejudiced by the allegedly improper statements by the prosecutors. See *People v. Reese* (1984), 121 Ill. App. 3d 977, 983, 460 N.E.2d 446.

■ Next, defendant argues the trial court erred in entering judgment on three counts of murder. Defendant contends that because he was only charged with the commission of a single act of arson he may not be convicted of multiple murders based on that single act.

Defendant cites *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. *King* holds that a defendant cannot be convicted of multiple crimes against a victim which are all based on a single physical act, and when there is identity of proof for all the offenses. (66 Ill. 2d 551, 566.) However, the courts in Illinois have now recognized that multiple crimes can arise out of a single act where separate individuals are victims of that single physical act. See *People v. Mercado* (1983), 119 Ill. App. 3d 461, 463, 456 N.E.2d 331, and cases therein cited.

In the case at bar, the parties stipulated that three separate vic-

tims died from the instant fire. Therefore, we conclude defendant was properly convicted of three separate counts of murder.

■■ Next, defendant argues his conviction for aggravated arson must be vacated because it is the predicate felony for the felony murder counts.

After the sentencing hearing, the trial court sentenced defendant to natural life imprisonment. The court did not impose a sentence for aggravated arson. In *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223, defendant appealed both the death sentence imposed on three counts of murder and his conviction of three counts of armed violence based on murder. The supreme court held:

"Although three guilty verdicts were returned against the defendant for the offense of armed violence, no sentences were imposed on those verdicts. The final judgment in a criminal case is the sentence, and, in the absence of the imposition of a sentence, an appeal cannot be entertained." (102 Ill. 2d 23, 51.)

Because in the instant case the trial court did not impose sentence on the offense of aggravated arson, we cannot adjudicate the propriety of the aggravated arson conviction.

■■ Next, defendant argues the trial court erred in imposing a sentence of natural life imprisonment.

The relevant statute provides (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1):

"(a) A sentence of imprisonment for a felony shall be a determinant sentence set by the court under this Section, according to the following limitations:

(1) for murder, *** (b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty *** the court may sentence the defendant to a term of natural life imprisonment, or (c) if the defendant *** is found guilty of murdering more than one victim, the court shall sentence the defendant to a term of natural life imprisonment ***."

Because we have determined that defendant was properly convicted of murdering more than one person, the trial court was mandated to impose a natural life sentence under sections 5—8—1(a)(1) and (c). (*People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059.) Furthermore, because the trial judge noted the crime of setting a fire to an apartment building filled with sleeping residents was "rather brutal," the trial court may have had discretion to sentence defendant to natural life based on sections 5—8—1(a)(1) and (b). We find no error here.

■■ Finally, the State argues the trial court should have imposed

three concurrent sentences of life imprisonment and requests we correct the mittimus accordingly. However, the Stata is not allowed to contest the propriety of the sentence on defendant's appeal. *People v. Kent* (1976), 40 Ill. App. 3d 256, 265-66, 350 N.E.2d 890.

For these reasons, the convictions and sentence appealed from are affirmed.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.