THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE NEUMANN, Defendant-Appellant.

First District (3rd Division)   No. 83—2422

Opinion filed August 27, 1986.—Rehearing denied November 12, 1986.

364

Howard T. Savage and Adam Bourgeois, both of Chicago (Howard O. Edmonds, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Peter D. Fischer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial, defendant Lawrence Neumann was convicted of murder, murder while committing armed robbery and murder while committing burglary. He was found eligible for the death penalty but the jury declined to impose it, and defendant was sentenced to natural life imprisonment in the Department of Corrections. Defendant appeals, contending that: (1) the trial court erred in denying his petition for discharge based on the denial of his right to a speedy trial; (2) the trial court erred in failing to disqualify itself from defendant's retrial after the original proceeding was declared a mistrial; (3) the State failed to prove defendant guilty of murder beyond a reasonable doubt; (4) the trial court erred in admitting certain evidence and excluding other evidence about the State's key witness, Frank Cullotta and (5) the prosecutor's remarks during closing and rebuttal arguments were prejudicial and constituted reversible error.

On September 25, 1979, Robert Brown was strangled, beaten and stabbed to death in his clothing and jewelry store at 3120 North Nordica Street in Chicago. Jewelry was taken from the store, and the office safe was left open. The Chicago police were unable to solve the crime.

In April 1982, while imprisoned in Nevada, Frank Cullotta entered into an agreement with the Federal Bureau of Investigation (FBI) whereby in return for information about various crimes in which he was involved, he would become part of the Federal witness protec-

tion program, receive a maximum sentence of 10 years' imprisonment for cases pending against him at that time, and receive immunity from prosecution in Nevada and in Federal court regarding the matters he discussed.

Pursuant to this agreement, Cullotta related his involvement in the 1979 murder of Robert Brown. He was later granted immunity in Illinois and testified for the State at defendant's trial for the murder and robbery of Brown. Cullotta testified that he had lived in Chicago until 1978 when he moved to Las Vegas, Nevada. He stated that he had known Brown since 1964 and, in the mid-1970's, saw him once or twice each week. During that time, Brown would come to a discotheque Cullotta owned to try to sell jewelry out of his briefcase to bar customers and employees. Cullotta also testified that he had known the defendant since 1970. Defendant came to Las Vegas 12 or more times a year and would sometimes stay at Cullotta's apartment.

In September 1979, Cullotta was in Chicago. He had a short conversation with Wayne Matecki after which he called defendant on the phone. He told defendant he was with Matecki who had "something good" about which he could not talk over the phone and suggested that defendant and Matecki contact one another within the next few days. Cullotta testified that he and Matecki discussed robbing Brown, who had an unusually large amount of jewelry at his store. Subsequently, they and the defendant finalized the plan. They decided that Matecki, whom Brown knew, would enter the store first, pretending to be shopping. Defendant would enter later and rob both Brown and Matecki. Defendant would then take the proceeds of the robbery to Las Vegas, and he and Cullotta would sell it. Cullotta then returned to Las Vegas.

Cullotta further testified that in late September, he received a phone call from defendant who indicated there had been a problem with the robbery about which he would tell Cullotta when he saw him in a day or two. Cullotta next heard from the defendant a couple of days later at his apartment in Las Vegas. Defendant told Cullotta that he had the merchandise but that he had to kill Brown. When Cullotta asked him why, defendant explained that Matecki had become worried about repercussions from the Brown robbery and that they therefore both decided to kill Brown so there would be no witness. Cullotta then testified as to the details of the murder as recounted to him by the defendant.

Defendant and Cullotta sorted the jewelry from Brown's store which defendant had brought with him to Las Vegas in an attache case. The next day, Cullotta and defendant took the jewelry to a store

owned by Sid Sargent in the commercial center of town. Sargent agreed to purchase some of the jewelry for $22,000 and gave him $14,000 that day. They returned the next day for the balance, refused to accept a check, and took the remaining $8,000 in cash. Cullotta testified that he received $7,300 and defendant took his and Matecki's shares back to Chicago. Cullotta also testified that defendant gave him one-third of $3,000 he had taken from Brown's body, and a gram of cocaine.

Cullotta stated that on October 1, 1979, he and defendant opened a safe-deposit box at the Valley Bank in Las Vegas for the jewelry they had not sold to Sargent and an automatic gun defendant was carrying. On October 4, defendant returned to Illinois.

On October 4, 1982, defendant and Wayne Matecki were indicted by a Cook County grand jury for two counts of murder, two counts of felony murder and one count each of burglary, armed robbery and conspiracy. Defendant was arrested on November 12, 1982. Matecki was acquitted in a bench trial before Judge Kenneth Gillis. Defendant was convicted by a jury after a trial conducted simultaneously with Matecki's trial. When the jury was polled, however, one juror recanted his verdict and a mistrial was declared. A second jury trial was held, and defendant was convicted of murder, murder while committing armed robbery and murder while committing burglary.

On appeal, defendant first contends that the trial court erred in denying his petition for discharge for denial of his right to a speedy trial where he was arrested November 12, 1982, and trial began March 14, 1983. At the time of his arrest for the Brown murder, defendant was in Federal custody awaiting sentencing on a Federal weapons violation. On November 12, 1982, Federal marshals took him to a Cook County circuit courtroom where he was arraigned, waived reading of the indictment and pleaded not guilty. On that date, defendant asserted his right to a speedy trial pursuant to the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5). Defendant was then returned to the Metropolitan Correctional Center in the custody of the Federal marshals. Defendant appeared in the circuit court of Cook County on November 18, November 23, and December 1, 1982, but was not transferred to Cook County jail until the end of February 1983.

Defendant argues that for purposes of a speedy trial, the time he was in Federal custody after November 12, 1982, must be included in the computation of the statutory period. Section 103—5(a) provides that every person *in custody in this State* shall be tried by the court having jurisdiction within 120 days from the date he was taken into

custody, unless there is a delay occasioned by the defendant. (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a).

■■ The trial court denied defendant's petition for discharge pursuant to section 103—5 because on November 12, 1982, defendant was not under the control of the State of Illinois. Therefore section 103—5 was not applicable, and the statutory term did not begin to run. We find no error in the court's determination. (See, e.g., People v. Nolan (1981), 102 Ill. App. 3d 895, 430 N.E.2d 345; People v. Terlikowski (1967), 83 Ill. App. 2d 307, 227 N.E.2d 521.) Indeed, the fact that defendant was accompanied by Federal marshals each time he visited the circuit court of Cook County and was returned to the Metropolitan Correctional Center is evidence that he was not even in temporary custody of this State but remained in Federal custody. (People v. Dye (1977), 69 Ill. 2d 298, 371 N.E.2d 630.) We further find no indication in the record of any voluntary relinquishment of custody by the Federal authorities to support defendant's citations of authority. See, e.g., People v. Fosdick (1967), 36 Ill. 2d 524, 224 N.E.2d 242; People v. Patheal (1963), 27 Ill. 2d 269, 189 N.E.2d 309.

Defendant's statutory right to a speedy trial must therefore arise under the Interstate Agreement on Detainers (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9). (People v. Nolan (1981), 102 Ill. App. 3d 895, 430 N.E.2d 345.) The statutory term of 120 days, however, may be tolled at the trial court's discretion for a showing of good cause. (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9 (articles IV(c) and VI(a) of the Agreement).) On January 19, 1983, the State initiated proceedings for custody pursuant to the Agreement on Detainers by filing a warrant and request for temporary custody with the Federal Bureau of Prisons. Richard Krasneck, a legal technician with the bureau, testified that when the warrant was lodged on January 20, defendant was informed that he could immediately request a final disposition of the pending indictment and that his failure to do so started an automatic 30-day waiting period, during which time the State would be unable to get custody of him.

■■ The trial court found that defendant was informed and understood that he had an option to waive the 30-day waiting period and that his failure to waive it was a delay attributable to him. The court therefore tolled the 120-day term by 30 days. In resolving whether a delay is attributable to the defendant, much deference is given to the trial court's determination; its decision should be sustained absent a clear abuse of discretion. People v. Reimolds (1982), 92 Ill. 2d 101, 440 N.E.2d 872.

■■ Defendant does not allege error in the trial court's determina-

tion nor do we find any. Defendant further concedes that he was tried within two weeks of being transferred from Federal prison to the Cook County jail. His argument that he was denied his statutory right to a speedy trial must therefore fail.

■ Defendant also complains that his constitutional right to a speedy trial was violated. The constitutional right to a speedy trial cannot be defined in terms of an absolute standard of time in which the accused must be brought to trial. (*People v. Nolan* (1981), 102 Ill. App. 3d 895, 430 N.E.2d 345.) Thus, the speedy-trial statute was enacted to give some concrete meaning to the right to a speedy trial. (*People v. Rhoads* (1982), 110 Ill. App. 3d 1107, 443 N.E.2d 673.) In *Rhoads* the court stated:

> "The operation of the statute typically will prevent the constitutional question of a speedy trial from arising, since if an accused is tried within 120 days after being taken into custody, or demand of trial while on bond, there will have been ordinarily no arbitrary or oppressive delay which the constitution prohibits." (*People v. Rhoads* (1982), 110 Ill. App. 3d 1107, 1114, 443 N.E.2d 673, citing *People v. Love* (1968), 39 Ill. 2d 436, 441, 235 N.E.2d 819.)

Since we have already determined that defendant was tried within the statutory term, we find it unnecessary to address further his constitutional argument.

■ Defendant next contends that the trial court erred in denying defendant's petition for substitution of judges in which he alleged that the trial court was prejudiced against him. This decision was made after the original proceeding was declared a mistrial. As evidence of Judge Gillis' bias, defendant argues that when the court acted as the trier of fact in codefendant Matecki's concurrent bench trial, it determined that Frank Cullotta was a credible witness but that his testimony as to Matecki was uncorroborated. Matecki was therefore acquitted. Defendant maintains that in the court's discussion of the lack of corroboration as to Matecki, it implied that there was sufficient corroboration of Cullotta's testimony as to Neumann to find defendant guilty. This indicated prejudice against him.

A trial judge is under no duty to recuse himself because he presided at a prior trial of a codefendant or even because he presided at a prior trial of the defendant in the same cause. (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 400 N.E.2d 436, *cert. denied* (1981), 449 U.S. 1077, 66 L. Ed. 2d 799, 101 S. Ct. 855.) Further, to be disqualifying, the alleged bias or prejudice of the trial court must be shown to have stemmed from an extrajudicial source and result in an opinion

on the merits on a basis other than what the judge learned from the case. (*United States v. Grinnell Corp.* (1966), 384 U.S. 563, 16 L. Ed. 2d 778, 86 S. Ct. 1698.) Allegedly erroneous findings and rulings by the trial court are insufficient reasons to believe the court had personal bias or prejudice for or against a defendant. *People v. Massarella* (1979), 80 Ill. App. 3d 552, 400 N.E.2d 436.

■ Moreover, this court has decided that the burden of establishing actual prejudice is on the defendant. (*People v. Nickols* (1976), 41 Ill. App. 3d 974, 354 N.E.2d 474.) In the absence of a showing of animosity, hostility, ill-will or distrust towards the defendant, proof falls short of establishing the actual prejudice which would interfere with a fair trial. (*People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867.) In the case before us, defendant has failed to prove actual prejudice. Taken in context, the court's statements about Cullotta's credibility indicate no prejudice against the defendant. Indeed, the court repeatedly and thoughtfully discussed the theory of corroboration which, it emphasized, must be personal to each defendant. Further, the court specifically rejected the State's argument that its evidence against defendant corroborated Cullotta's statements as to defendant and would therefore corroborate Cullotta's statements as to Matecki.

Additionally, at the hearing on defendant's motion for a new trial, Judge Gillis stated that he had no preconceived ideas about defendant's guilt prior to defendant's retrial and that his statements regarding Matecki's acquittal were in no way intended to indicate prejudice against the defendant. We therefore hold that the trial court properly refused to disqualify itself from defendant's second trial.

■ Defendant next contends that the State failed to prove him guilty of murder beyond a reasonable doubt. He argues that, as a matter of law, Frank Cullotta was not a credible witness. He maintains that by virtue of Cullotta's extensive criminal record, because he was an accomplice to the murder, and because his testimony was not sufficiently corroborated, no rational trier of fact could have found defendant guilty beyond a reasonable doubt.

We note first that Cullotta's criminal record does not disqualify him as a witness; rather, his criminal record goes to the issue of his credibility. (Ill. Rev. Stat. 1981, ch. 38, par. 155–1.) Moreover, it is the jury's function to resolve factual disputes, assess witness credibility and determine the weight and sufficiency of evidence, and the jury's verdict will not be reversed unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to defendant's guilt remains. *People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606.

Defendant also objects to Cullotta's testimony because he was an accomplice to the crime. Again, whether accomplice testimony, corroborated or uncorroborated, is a satisfactory basis for a conviction goes to the weight of the evidence and is therefore in the province of the finder of fact. *People v. Lee* (1984), 128 Ill. App. 3d 937, 471 N.E.2d 988; see also *People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029 (even though accomplice testimony is viewed with suspicion and scrutinized carefully on review, the fact that a witness is an accomplice or expects leniency affects only the weight to be given his testimony).

■ Further, we do not agree that defendant was not proved guilty beyond a reasonable doubt because Cullotta's testimony as to who committed the murder was insufficiently corroborated. The State presented evidence to corroborate virtually every aspect of Cullotta's testimony. The State introduced records of the car dealer from whom Cullotta purchased a Cadillac immediately before leaving Chicago for Las Vegas. Sid Sargent testified regarding the purchase of the jewelry from Cullotta and defendant. He further testified about the subsequent sale of several of the pieces of jewelry to friends. A friend-purchaser testified as to the purchase, and Brown's ex-wife testified that those items and another which Cullotta had reset for himself had belonged to her ex-husband personally. Safe-deposit–box records from Las Vegas were introduced to corroborate Cullotta's testimony that he and defendant had opened a box while defendant was in Las Vegas after the murder. Although defendant appears to concede that the State sufficiently corroborated Cullotta's testimony about what jewelry was sold and defendant's involvement with the jewelry in Las Vegas, he objects that there was no corroboration of Cullotta's testimony that the defendant actually killed Brown.

Cullotta, however, recounted in gruesome detail the events of the evening of September 25, 1979, as told to him by the defendant. At the trial, the State introduced photographs of the body and the crime scene which supported the story Cullotta recounted. The relevant physical evidence recovered from the scene was introduced, and various Chicago police officers and crime-lab personnel testified about their investigations.

Most compelling was the testimony by Dr. Eupiel Choi, a forensic pathologist with the Cook County medical examiner's office. Dr. Choi testified that there were three independent causes of death: asphyxiation, a severed aorta and a fractured skull. The wounds were consistent with the activities described by Cullotta as told to him by the defendant. The State also introduced defendant's bank records which

showed the deposits of large sums of money during the late fall of 1979.

■■ The defendant testified in his own behalf and produced several witnesses in support of his theory that Cullotta himself had killed Brown. However, speculation that another person committed the offense does not necessarily raise a reasonable doubt as to the guilt of the accused, even if that speculation is supported by circumstantial evidence. (*People v. Williams* (1985), 131 Ill. App. 3d 597, 475 N.E.2d 1082.) Further, the jury is not required to give all testimony equal weight and may place greater reliance on certain testimony. (*People v. Williams* (1985), 131 Ill. App. 3d 597, 475 N.E.2d 1082.) We find that after evaluating all the evidence presented, the jury properly found the defendant in this case guilty beyond a reasonable doubt.

■■ Defendant next objects to the admission of certain evidence about Frank Cullotta's connections to organized crime and the exclusion of other evidence about Cullotta's involvement in a 1962 murder. Defendant maintains that the prosecution attempted to "launder" Cullotta as a witness by eliciting extensive testimony about his involvement with organized crime, the threat on his life by the crime syndicate and his subsequent agreement to cooperate with the FBI, his participation in the Federal witness-protection program, and the grants of immunity under which he was testifying.

Whether offered evidence will be admitted or excluded depends on whether it tends to make the question of guilt more or less probable, that is whether it is relevant. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.) The admissibility of evidence is within the sound discretion of the trial court, and its ruling will not be reversed absent a clear showing of abuse of discretion. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696; *People v. Hunter* (1984), 124 Ill. App. 3d 516, 464 N.E.2d 659.) This is true for the reception of evidence collateral to an issue in a case and intended to affect the credibility of a witness as well; its admissibility rests within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *People v. Allison* (1983), 115 Ill. App. 3d 1038, 452 N.E.2d 148.

■■ Defendant has not shown nor do we find any abuse of the trial court's discretion in the admission of evidence about Cullotta's organized-crime background and subsequent deals with the Federal and State governments. The complained-of evidence affected Cullotta's credibility and was therefore probative of his testimony.

■■ Defendant next argues that the trial court should have excluded the parts of Cullotta's testimony indicating his knowledge of Robert Brown's connection to organized crime through his silent part-

ners, Al Bruno and Alan Dorfman, Brown's ex-wife's similar testimony and Cullotta's testimony as to the conversations with Matecki in which the robbery was planned. We find no error in the admission of this evidence which was relevant to explain why the jewelry from Brown's store had to be sold away from Chicago and which tended to corroborate the defendant's decision to kill Brown in order to avoid repercussions from organized crime about which Cullotta testified extensively.

■■■ Defendant also complains that the trial court erroneously excluded testimony that while Cullotta had previously testified to being only indirectly involved in the 1962 murder of Jerry Lizner, he told a defense witness that he had committed the murder by putting the man's head in a vice and turning the vice until the man's eyes popped out. The court based its refusal to allow the testimony on *People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409 and *People v. Rainford* (1965), 58 Ill. App. 2d 312, 208 N.E.2d 314. Those cases are authority for the proposition that a proper foundation must be laid where an attempt is made to impeach a witness through the use of a prior inconsistent statement; where no proper foundation was laid when the witness was on the stand, the witness may not be recalled and interrogated about the statement because to do so would unfairly highlight the attempted impeachment. The trial court in the instant case, having determined that Cullotta was not asked about the statement he allegedly made to the defense witness, properly excluded that testimony.

■■■ Defendant next argues that he was unable to rehabilitate Wayne Matecki after Matecki was cross-examined on his failure to report to the police his knowledge of the 1962 murder of Lizner. In an offer of proof, Matecki stated that he did not contact the police because he did not want to be Cullotta's next victim. The trial court allowed the offer of proof to stand and noted that the prosecution's objection to the testimony had been sustained. Defendant concedes in his brief that evidence which would unduly arouse the passions of the jury is properly excluded. (*People v. Reimnitz* (1979), 72 Ill. App. 3d 761, 391 N.E.2d 380, *cert. denied* (1982), 456 U.S. 906, 72 L. Ed. 2d 162, 102 S. Ct. 1751.) Matecki's self-serving statement was not probative of a fact in issue in the instant case and could only have served to arouse the passions of the jury; it was therefore properly excluded.

■■■ Defendant's final contention is that certain of the prosecutor's remarks during closing and rebuttal arguments constituted reversible error. A prosecutor has wide latitude in closing argument, and the trial court's determination of the propriety of that argument

will not be disturbed absent a clear abuse of discretion or substantial prejudice to the defendant. (*People v. Barney* (1982), 111 Ill. App. 3d 669, 444 N.E.2d 518.) Where allegedly improper comments do not constitute a material factor in the conviction, or where they are of such minor character that prejudice to defendant is not their probable result, the verdict will not be disturbed on appeal. (*People v. Lamacki* (1984), 121 Ill. App. 3d 403, 459 N.E.2d 1142, *cert. denied* (1984), 469 U.S. 885, 83 L. Ed. 2d 193, 105 S. Ct. 256.) In applying this test, the entire argument must be considered and the complained-of comments placed in context. *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.

We have determined that in the instant case many of the complained-of remarks were in fact fair comment on matters properly in evidence and reasonable inferences that could be drawn therefrom. (See, *e.g., People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) We therefore address only those remarks which were not comments on the evidence presented at trial.

■■ Defendant argues that the prosecution impugned the integrity of defense counsel, defendant and defendant's wife. The record, however, reveals that the trial court sustained most of defense counsel's objections to the complained-of comments and instructed the jury to disregard them. The trial court also properly instructed the jury to consider only the evidence in the case and warned the jury that closing arguments are not evidence and that arguments not based on the evidence must be disregarded. Such curative instructions have been held to cure prejudice. (*People v. Faysom* (1985), 131 Ill. App. 3d 517, 475 N.E.2d 945; *People v. Rowe* (1983), 115 Ill. App. 3d 322, 450 N.E.2d 804.) We find that the comments to which defense objections were overruled are hardly such that the jury would have reached a different result had the comments not been made. *People v. Barnes* (1983), 117 Ill. App. 3d 965, 453 N.E.2d 1371.

■■ Defendant also objects to the prosecution's comment about the lack of any defense witnesses to testify about a party defendant allegedly attended the night of the murder. We find, however, that the remark was invited by defense counsel's argument that the State should have produced documentary evidence about the party to show the hall was rented on the night in question. A defendant cannot complain of statements made in rebuttal which were invited by the defendant's own argument. *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.

■■ Defendant's final argument is that the cumulative effect of

the prosecutorial misconduct prejudiced his right to a fair trial. We disagree. In light of the evidence of defendant's guilt, we find that none of the complained-of remarks, either singly or taken together, could have been a material factor in his conviction, nor would the result have been different in their absence. (See *People v. Faysom* (1985), 131 Ill. App. 3d 517, 475 N.E.2d 945.) We therefore decline to reverse defendant's conviction on this ground.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and McNAMARA, J., concur.