Frank L. MacDOUGALL, Petitioner–Appellant,

v.

Gary McCAUGHTRY, Warden, and Donald Hanaway, Attorney General for the State of Wisconsin, Respondents–Appellees.

No. 91–1193.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1991.

Decided Jan. 10, 1992.

---

Jeff S. Olson, Julian, Olson & Lasker, Madison, Wis. (argued), for petitioner-appellant.

James M. Freimuth, State of Wis. Dept. of Justice, Madison, Wis. (argued), for respondents-appellees.

Before CUMMINGS, WOOD, JR. and CUDAHY, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Frank L. MacDougall filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He bases his petition on ineffective assistance of trial counsel in violation of the Sixth Amendment. He states that his attorneys acted unreasonably by failing to present psychiatric testimony that would support his defense theory, that he was prejudiced by this failure, and therefore convicted of murder. The district court held that MacDougall could not establish that he was prejudiced by the omission of the psychiatric testimony. We agree.

## I. BACKGROUND

Frank MacDougall was having a beer with his girlfriend at Bernie's Tavern in Westfield, Wisconsin when Lawrence Achterberg and Robert Puterbaugh came into the bar to shoot some pool. That, however, was not the only shooting which would occur that night. MacDougall and Achterberg had an ongoing dispute over $20 that MacDougall had borrowed from Achterberg but had never repaid. At some time after Achterberg and Puterbaugh arrived, MacDougall asked his girlfriend to leave and get a shotgun that MacDougall had at his home. She returned later with the shotgun stowed in MacDougall's truck, parked just outside the bar. After Achterberg and Puterbaugh had played some pool they sat down at the bar, a few stools away from MacDougall. Some time later, Mac-Dougall got up, walked out to the truck, pulled out the loaded shotgun, and came back into the bar. Puterbaugh heard the door shut and turned to see MacDougall pointing the shotgun at Achterberg's back. MacDougall fired a single shot, set down the shotgun, resumed his seat, and had a drink. The bartender left to call the police. When she returned, MacDougall asked her to put the gun behind the bar, cautioning her to be careful because one of the barrels was still loaded. Subsequently, MacDougall was arrested and taken to the Mar-quette County Sheriff's Department. While there, he admitted to the shooting and stated that he did not believe that Achterberg was dead and that he should have "given [Achterberg] the other barrel."

Prior to his trial, MacDougall underwent two psychiatric examinations. The first was performed by a court-appointed psychiatrist, Dr. A.A. Lorenz. Dr. Lorenz submitted a lengthy report, in which he determined that MacDougall did not fulfill the necessary elements to prove an insanity defense. Alternatively, the doctor reported that MacDougall may have had a delusion causing him to believe his life was threatened by Achterberg. He stated that "the patient is profoundly paranoid under the influence of alcohol and acts out, in my opinion, illogically, irrationally, with paranoid ideation, feeling that he was threatened and he had to resolve the problem immediately in a macho man or hero type mechanism." The doctor concluded that it was his belief that MacDougall was not mentally defective, but that his antisocial personality disorder was so profound that it enhanced his acting in an irrational way and caused him to be unable to conform his actions to the law at the time of the crime.[1]

The second examination was performed by Dr. John H. Greist, a psychiatry professor at the University of Wisconsin Medical School. This examination was made at the request of defense counsel. Dr. Greist stated that MacDougall had an organic brain syndrome that affected his memory, perceptions and judgment enough that on the night of the shooting he could have misinterpreted the victim's behavior as threatening. However, Dr. Greist went on to conclude that on the night of the shooting, MacDougall was not so impaired by the organic brain syndrome that he could not conform his behavior to the requirements of the law.

At trial, MacDougall's lawyers sought to present a theory of imperfect self-defense. A successful claim of imperfect self-defense would reduce the first-degree murder

---

1. Dr. Lorenz also stated that when discussing the crime with MacDougall, his impression was that the shooting was not deliberate or premeditated.

conviction to manslaughter, carrying a maximum term of ten years imprisonment. To prove imperfect self-defense in Wisconsin, MacDougall had to show that he had a sincere, albeit unreasonable, belief that shooting Achterberg was necessary to defend himself. The attorneys did not present any expert testimony to support this defense. MacDougall was the only defense witness. The prosecution presented sixteen witnesses. MacDougall testified that Achterberg threatened him. This purported threat was a single motion by Achterberg to the petitioner, pointing his forefinger and thumb as if it were a gun, and pretending to shoot. Additionally, MacDougall testified that Achterberg was smirking at him throughout the evening. MacDougall stated that these gestures and expressions had occurred on previous occasions. MacDougall and another witness testified about Achterberg's previous angry outburst directed at MacDougall. Several witnesses testified that MacDougall believed that Achterberg had paid someone fifty dollars to have MacDougall "beat up." MacDougall testified that he had heard rumors that Achterberg had killed his own wife. MacDougall also testified that he had seen Achterberg carry a switchblade knife, and had heard rumors that Achterberg carried a gun. These factors, MacDougall contends, were enough to cause him to believe that Achterberg intended to kill him that night. After a three-day jury trial, Frank MacDougall was convicted of first-degree murder. He was sentenced to life imprisonment.

## II. ANALYSIS

■ When a defendant claims that a Sixth Amendment right to counsel has been violated because of ineffective performance, he or she must show that the attorney's representation was below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984). Once the defendant establishes that the performance was inadequate, he or she must also show that the attorney's failings prejudiced the case so that if the attorney had not made the error, a reasonable probability exists that the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The court will not disturb the result unless counsel's error had an effect on the judgment. *Id.* at 691, 104 S.Ct. at 2066.

■ The district court denied MacDougall's habeas corpus petition because MacDougall could not establish that he was prejudiced by the attorneys' failure to call the experts to testify. The court did not consider whether the attorneys' performance was constitutionally inadequate.[2] The two-part test need not be considered in a particular order. Nor must both parts of the test be analyzed if the case may be resolved under a single prong. *Id.* at 697, 104 S.Ct. at 2069; *Moffett v. Kolb*, 930 F.2d 1156, 1161 n. 1 (7th Cir.1991).

■ When deciding MacDougall's petition, the district court assumed as true the allegation that the psychiatric testimony was admissible, and that MacDougall had established trial counsel's ineffectiveness by not proffering that testimony. We too may make that assumption for purposes of examining prejudice. The focus then becomes whether failure to present expert testimony was critical to a theory of defense. *Rogers v. Israel*, 746 F.2d 1288, 1292 (7th Cir.1984) (failing to present expert testimony that, when matched with other testimony, will raise a reasonable doubt whether defendant deliberately killed victim or whether defendant acted in self-defense is prejudicial and a Sixth Amendment violation if counsel's failing to call expert was unreasonable). To show a rea-

---

2. To show ineffective performance, MacDougall urges us to determine that a ruling by the state appellate court is unconstitutional under the Fourteenth Amendment. The appellate court stated that psychiatric testimony is not admissible in the trial under the Wisconsin evidentiary

rule stated in *Steele v. State*, 97 Wis.2d 72, 294 N.W.2d 2 (1980). The constitutionality of applying the *Steele* rule to the expert testimony in this situation has not been previously tested. However, this analysis is unnecessary for our decision and will not be addressed.

sonable probability that the psychiatric testimony would have affected the outcome of the trial, the doctors' reports in conjunction with MacDougall's testimony must overcome the evidence refuting the defense. They cannot. The psychiatric testimony must do more than have some conceivable effect on the proceeding. MacDougall must affirmatively prove that its omission undermined the jury's verdict. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067; *see also United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir.1989). When deciding if the absence of the psychiatrists' testimony prejudiced MacDougall, the court must presume that the jury acted according to the law. The court must exclude the possibility that the jury acted arbitrarily, and that the psychiatrists' testimony nullified the other evidence. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068. In this instance, the combined effect of the psychiatric testimony is not enough to have undermined confidence in the jury verdict. Only Dr. Lorenz' opinion was strong enough to indicate that MacDougall was suffering from a delusion or misperception at the time of the shooting. Despite Dr. Greist's diagnosis of a pervasive organic brain syndrome, he could not conclude that the syndrome affected MacDougall's behavior on that night. However, even if the jury found the psychiatric evidence to be persuasive, the defense did not present enough other evidence that, when combined with the psychiatrists' testimony, could have undermined the confidence in the verdict. *See Rogers*, 746 F.2d at 1292.

■ Although psychiatric testimony may be the most persuasive evidence that is available to establish the defense, the testimony must be considered within the context of each particular case. *Cf. United States v. Keck*, 773 F.2d 759, 771 (7th Cir. 1985). MacDougall offered no corroboration for his claim that Achterberg had been threatening him with physical violence for a period of time. Nor could MacDougall offer support for his claim that Achterberg threatened him that night. During Mac-Dougall's trial, the prosecution called several eyewitnesses to the shooting. None of them testified that Achterberg spoke to MacDougall on that night, nor did any of the witnesses see Achterberg make threatening gestures or looks at MacDougall. Another defense weakness was that Mac-Dougall could not remember the actual moments of the shooting, and therefore was unable to support his own theory that his life was being threatened at that time. Notably, Achterberg was shot in the back from across the room. The evidence did not support a conclusion that a threat of violence occurred that would provide the seed which grew into MacDougall's misperception.

The prosecution also presented considerable evidence to support a premeditation theory that contradicted MacDougall's imperfect self-defense claim. Witnesses testified that the petitioner made death threats against the victim. During his testimony, MacDougall admitted to making these threats. Petitioner also testified that he sent his girlfriend home from the bar that night to get the shotgun specifically because Achterberg had shown up at the tavern. MacDougall's overall credibility was tested, and the jury did not believe his explanation of the events that culminated in the shooting. *See United States v. Hattermann*, 853 F.2d 555, 559 (7th Cir.1988).

Without more, a jury would have to ignore the overwhelming evidence against MacDougall to give a verdict under the imperfect self-defense theory. *Strickland*, 466 U.S. at 265, 104 S.Ct. at 2069. A reasonable probability does not exist that if the jury had heard the psychiatric testimony the verdict would have been different.

### III. CONCLUSION

Based upon the foregoing considerations, the district court decision denying MacDougall's petition for a writ of habeas corpus is

AFFIRMED.