**UNITED STATES of America ex rel. Lawrence NEUMANN, Petitioner,**

v.

**Thomas PAGE, Warden, Menard Correctional Center, Respondent.[1]**

No. 94 C 3498.

United States District Court, N.D. Illinois, Eastern Division.

April 21, 1995.

---

1. Rule 2 of the Rules Governing Section 2254 Cases provides that the proper party respondent in habeas corpus actions brought by a currently incarcerated person is the state officer having custody of the petitioner. Petitioner named both his warden and the Attorney General of the State of Illinois as party respondents. As the Attorney General of the State of Illinois is not petitioner's custodian for purposes of 28 U.S.C. § 2254, he is incorrectly named as a party respondent and is hereby dismissed from this action. Thomas Page, Warden of the Menard Correctional Center, remains as the sole proper party respondent. *See Reimnitz v. State's Attorney of Cook County,* 761 F.2d 405, 408 (7th Cir.1985).

Adam Bourgeois, Sr., Chicago, IL, for petitioner.

Michael A. Hurst, Arleen C. Anderson, Ill. Atty. Gen'ls. Office, Chicago, IL, for respondent.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

■ Petitioner Lawrence Neumann, an Illinois state prisoner, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Neumann alleges that, during jury selection at his trial, the state prosecutor exercised peremptory challenges in a discriminatory manner. As such, Neumann contends that the state violated the Sixth Amendment's guarantee to a petit jury composed of a fair cross

section of the community (incorporated through the Fourteenth Amendment) and the Fourteenth Amendment's Equal Protection Clause. Respondent answers that petitioner's application is procedurally defaulted and insufficient on the merits. For the reasons set forth below, Neumann's petition is denied with prejudice.

## I. BACKGROUND

Petitioner was tried by jury in the Circuit Court of Cook County, Criminal Division (Case No. 82 I 9855), for the September 25, 1979, murder of Robert Brown. On September 16, 1983, petitioner was convicted of murder, murder while committing armed robbery, and murder while committing burglary. Petitioner was sentenced to natural life imprisonment, and is currently in the custody of Thomas Page, Warden of the Menard Correctional Center, Menard, Illinois.

Following his conviction, petitioner appealed to the Illinois Appellate Court, contending that: "(1) the trial court erred in denying his petition for discharge based on the denial of his right to a speedy trial; (2) the trial court erred in failing to disqualify itself from defendant's retrial after the original proceeding was declared a mistrial; (3) the State failed to prove defendant guilty of murder beyond a reasonable doubt; (4) the trial court erred in admitting certain evidence and excluding other evidence about the State's key witness . . .; and (5) the prosecutor's remarks during closing and rebuttal arguments were prejudicial and constituted reversible error." *People v. Neumann,* 148 Ill.App.3d 362, 365, 101 Ill.Dec. 899, 901, 499 N.E.2d 487, 489 (1st Dist.1986). The Illinois Appellate Court rejected each of petitioner's claims, thereby affirming his convictions and sentence. The appellate court initially decided the case August 27, 1986, and denied a petition for rehearing on November 12, 1986.

Petitioner subsequently filed a Petition for Leave to Appeal to the Illinois Supreme Court, raising four of the five aforementioned issues. On February 6, 1987, the Illinois Supreme Court denied petitioner leave to appeal. *People v. Neumann,* 113 Ill.2d 581, 106 Ill.Dec. 53, 505 N.E.2d 359, *cert. denied,*

481 U.S. 1051, 107 S.Ct. 2184, 95 L.Ed.2d 840 (1987). Petitioner failed to seek state post-conviction relief pursuant to 725 ILCS 5/122–1 through 122–8, and now acknowledges that he may no longer file for state post-conviction relief as the statutory limitation period has expired. 725 ILCS 5/122–1.

Petitioner brings the instant application for a writ of habeas corpus, asserting a single ground for relief. Petitioner contends he was deprived of a fair trial by the systematic exclusion of African–Americans from his petit jury pursuant to *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Specifically, petitioner alleges that, during the jury selection process, the prosecutor forewarned petitioner's defense attorney of the prosecutor's intention to challenge and excuse all African–Americans sitting in the jury venire. Petitioner further alleges that the prosecutor in fact did use his peremptory challenges to excuse eleven African–Americans. Finally, petitioner contends that, at the time of his trial, Cook County prosecutors commonly and systematically used peremptory challenges to dismiss potential jurors based on their race.

In support of his allegations, petitioner offers the signed affidavit of Mr. Adam Bourgeois, petitioner's attorney at trial, and the signed affidavits of a number of local criminal defense attorneys.[2] In his affidavit, Mr. Bourgeois attests to the alleged statement made by the prosecutor prior to jury selection. Additionally, Mr. Bourgeois and the eleven local criminal defense attorneys allege that it was common practice, at the time of petitioner's trial, for Cook County prosecutors to exclude African–Americans from jury service based solely on their race. Petitioner further notes that Mr. Bourgeois unsuccessfully objected to the prosecutor's challenges during the jury selection process, arguing that they were "racist in design and motivation." (State R. at B–448; Habeas R. at 509).

Petitioner admits that he failed to bring his current claim to the highest Illinois court. Petitioner, however, contends that he can show sufficient cause and prejudice to excuse his procedural default. Most importantly, petitioner, a caucasian man, alleges that he lacked the requisite standing to raise a *Swain* challenge at the time of his trial and appellate proceedings and that such now constitutes sufficient cause to excuse his default. Petitioner further states that he has made a sufficient preliminary showing with respect to his claim, and asks this court to schedule a hearing through which he may expand upon his factual allegations and resolve his claim on the merits.

Respondent urges this court to dismiss petitioner's writ as procedurally defaulted and as insufficient on the merits. Respondent states that petitioner failed to properly present his claims in state court proceedings and that he has failed to establish cause for such default or prejudice resulting therefrom. Respondent further contends that the case law in effect at the time of petitioner's trial and appellate proceedings clearly provided petitioner with a valid constitutional argument in relation to the prosecutor's alleged discriminatory conduct. Similarly, respondent contends that petitioner's current factual argument was available at the time of petitioner's trial and appellate proceedings.

As for the merits of petitioner's claim, respondent asserts that petitioner has failed to set forth a sufficient factual basis to support his cause of action. Respondent specifically contends that petitioner's complaint, the affidavit of petitioner's counsel, and the supporting affidavits of local attorneys lack significant factual detail. Notwithstanding the factual or legal sufficiency of petitioner's attached affidavits, respondent further contends that the record in this case does not support petitioner's claim.

## II. *DISCUSSION*

### A. *Waiver*

█ Neumann brings his petition pursuant to 28 U.S.C. § 2254, the federal habeas corpus provision for state prisoners. As such, this court may consider the merits of Neumann's habeas corpus petition only after en-

2. All of the local criminal defense attorneys submitting affidavits are licensed to practice in the State of Illinois and have practiced in Cook County for a number of years.

suring that Neumann has overcome the two procedural hurdles of exhaustion and procedural default. *Id.; Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 2554–55, 115 L.Ed.2d 640 (1991); *Jones v. Washington,* 15 F.3d 671, 674 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2753, 129 L.Ed.2d 870 (1994).

### 1. *Exhaustion of State Court Remedies*

■ A state prisoner normally must exhaust all available state judicial remedies before a federal court will hear a petition for habeas corpus. *Coleman,* 501 U.S. at 731, 111 S.Ct. at 2554–55; *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *White v. Peters,* 990 F.2d 338, 341 (7th Cir.1993). This exhaustion requirement, codified in the federal habeas statute itself, gives states the initial opportunity to correct any violations of prisoners' federal rights. 28 U.S.C. § 2254(b); *Coleman,* 501 U.S. at 731, 111 S.Ct. at 2555; *Nutall v. Greer,* 764 F.2d 462, 463 (7th Cir.1985). However, the exhaustion requirement applies only to remedies available at the time the habeas petition is filed. *Verdin v. O'Leary,* 972 F.2d 1467, 1483 (7th Cir.1992); *United States ex rel. Johnson v. McGinnis,* 734 F.2d 1193, 1196 (7th Cir.1984). Thus, a petitioner seeking habeas corpus relief has exhausted his available state court remedies if he has procedurally defaulted his federal claims in the state court system. *Coleman,* 501 U.S. at 731–32, 111 S.Ct. at 2555. Respondent has conceded here that petitioner has exhausted all of his available state remedies.

### 2. *Procedural Default*

■ While a habeas corpus petitioner may have exhausted all of his state court remedies prior to filing for habeas review in the federal court system, the petitioner's constitutional claims may yet be barred from federal review if such exhaustion resulted from petitioner's procedural default of the claims. Habeas petitioners can default constitutional claims when they fail to raise the claims during the course of their state judicial proceedings or when they fail to take their claims to the highest state court. *Murray v. Carrier,* 477 U.S. 478, 488–89, 106

S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986); *Jones,* 15 F.3d at 675.

■ The rules relating to the procedural default of habeas claims are, like the rules related to the exhaustion requirement, "grounded in principles of comity." *See Coleman,* 501 U.S. at 731–32, 111 S.Ct. at 2555. Federal courts acknowledge that the states should have the first opportunity to address alleged violations of state prisoners' federal rights. *Id.* Furthermore, the federal courts acknowledge that a habeas corpus petitioner's failure to raise a claim during state court proceedings "reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and 'undercut[s] the State's ability to enforce its procedural rules.'" *Murray,* 477 U.S. at 491, 106 S.Ct. at 2647 (quoting *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982)).

■ Federal law does, however, provide two exceptions to the general rule of procedural default. A habeas petitioner can overcome a procedural default by showing either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 749–50, 111 S.Ct. at 2564–65; *Mills v. Jordan,* 979 F.2d 1273, 1277 (7th Cir.1992).

A review of the record demonstrates that petitioner failed to raise a jury discrimination claim, or a claim even remotely resembling such, during the pendency of his direct appeal. In fact, petitioner acknowledges that he did not raise such a claim on direct appeal or through Illinois statutory post-conviction review. Petitioner contends, however, that his default of the claim is now overcome by an adequate showing of cause and prejudice for such procedural failures. Petitioner does not contend that the fundamental miscarriage of justice exception excuses his waiver of the constitutional claim, and this court accordingly will not address such a possibility.

## B. *Cause for Procedural Default*

 In order to demonstrate cause for a procedural default, a habeas corpus petitioner must show that counsel's efforts to comply with a procedural rule were impeded by some objective, external factor, resulting in counsel's failure to preserve or raise the issue. *Murray,* 477 U.S. at 488, 492, 106 S.Ct. at 2645, 2647–48. Objective factors that constitute cause include " 'interference by officials' " that makes compliance with the State's procedural rule impracticable, and " 'a showing that the factual or legal basis for a claim was not reasonably available to counsel.' " *McCleskey v. Zant,* 499 U.S. 467, 493–94, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (quoting *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645).

### 1. *Availability of Legal Basis*

Petitioner contends that a number of factors constitute sufficient cause to excuse his procedural default. Most significantly, however, petitioner alleges that the factual and legal bases for his claim were not reasonably available to his counsel at the time of his trial and appellate proceedings. Petitioner's arguments lack merit for the foregoing reasons.

 At the time of petitioner's trial and state court appeals, federal law provided petitioner with a sufficient legal basis for relief. In fact, the Supreme Court confronted the very issue presented by petitioner in 1965, roughly eighteen years prior to petitioner's state trial. *See Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain,* the Court acknowledged that criminal defendants could establish equal protection violations by (1) presenting proof of the systematic exclusion of African–Americans through the use of peremptories over a period of time, and (2) presenting similar proof regarding race-based exclusions through the use of peremptories at the defendant's own trial. *Id.* at 227–28, 85 S.Ct. at 839–40.

Later, in *Batson v. Kentucky,* 476 U.S. 79, 95–96, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986), the Court overruled *Swain* to the extent that it foreclosed a defendant from raising an equal protection challenge based solely upon the state's use of peremptories at his own trial. Shortly after *Batson* was decided, the Court held that it could be applied retroactively only to cases, state or federal, that were not final at the time of the *Batson* decision. The Court defined "final" to mean a case " 'where the judgement of conviction was rendered, the availability of appeal exhausted, and the time for petition for *certiorari* had elapsed' " prior to the *Batson* decision. *Allen v. Hardy,* 478 U.S. 255, 257–58, 258 n. 1, 106 S.Ct. 2878, 2879–80, 2880 n. 1, 92 L.Ed.2d 199 (1986) (citation omitted).

Furthermore, the law in effect at the time of petitioner's trial and initial appellate proceedings allowed a criminal defendant to raise his own challenge to racial exclusion in the petit jury regardless of the fact that his race differed from the race of the excluded prospective jurors. *See Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (plurality). Although the Court failed to produce a majority opinion in *Peters,* six Justices "agreed that racial discrimination in the jury selection process cannot be tolerated and that the race of the defendant has no relevance to his or her standing to raise the claim." *Powers v. Ohio,* 499 U.S. 400, 409, 111 S.Ct. 1364, 1369, 113 L.Ed.2d 411 (citing *Peters,* 407 U.S. at 504–505, 92 S.Ct. at 2169–2170) (opinion of Marshall, J.); *id.* at 506–507, 92 S.Ct., at 2170–2171 (White, J., concurring in judgment)).

In any event, any supposed discrepancy as to the status of the standing issue did not, after 1984, exist in this jurisdiction. The United States Court of Appeals for the Seventh Circuit held in 1984 that a white defendant had standing to challenge discrimination against African–Americans in the jury selection procedure. *United States v. Gometz,* 730 F.2d 475, 478 (7th Cir.1984) (*en banc*) (citing *Peters,* 407 U.S. at 498–500, 92 S.Ct. at 2166–67), *cert. denied,* 469 U.S. 845, 105 S.Ct. 155, 83 L.Ed.2d 92 (1984). Instructive is the *Gometz* court's rather quiet citation of *Peters* for that proposition.

Petitioner, in the memorandum supporting his habeas corpus petition, acknowledged the existence of the aforementioned precedent and relied upon such as a basis for relief. In fact, petitioner adamantly argued that the

*Peters* and *Gometz* decisions were directly applicable to his situation. Petitioner stated in his memorandum that "[i]n *Peters*, . . . [t]he Supreme Court held a white man had standing to raise a systemic challenge even though the discrimination was being practiced against another race." (Defendant's [Petitioner's] Memorandum in Support of Habeas Petition at 3).

However, petitioner now disavows the precedential value of *Peters* and *Gometz* in his reply to respondent's answer. Petitioner currently contends that he did not have the requisite standing to raise a *Swain* challenge at the time of his trial. In fact, petitioner now states that "it was not until 1991 that the Supreme Court held that a white man could challenge the exclusion of African–Americans from the jury panel," citing *Powers*. (Plaintiff's [Petitioner's] Response to Defendant's Answer to Habeas Petition at 2). Petitioner contends that his alleged lack of standing constitutes cause sufficient to excuse his procedural default.

Petitioner was right the first time; he had the requisite standing to raise his current challenge during the pendency of his state court proceedings. The *Swain* case provided petitioner, at the time of his trial and initial appellate proceedings, with a sufficient legal basis to support his current claim, and the *Peters* and (less so, because of timing) *Gometz* cases clearly provided petitioner with the requisite standing to raise such a claim at the time of his trial and initial appellate proceedings.

The law of cross-racial standing, not to say the law regarding racialist peremptory challenges in general, developed in the case of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The *Batson* case removed the requirement that a defendant show systematic exclusion in addition to exclusion in his particular trial. After *Batson*, "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 96, 106 S.Ct. at 1723. In articulating the requirements for a new *Batson* claim, the *Batson* court at the very least strongly sug-

gested that the defendant must be of the same "cognizable racial group" as the excluded juror to assert a claim of actionable race bias in that defendant's jury selection based on evidence solely from his trial. *Id.; see also Holland v. McGinnis*, 963 F.2d 1044, 1053 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993). *Powers* in 1991 allowed cross-racial standing in *Batson* claims. *Powers*, 499 U.S. at 409, 111 S.Ct. at 1369. *Powers* is not available to give Neumann a *Batson* claim here, since his direct appeal was long final when the "new rule" in *Powers* came down. *Holland*, 963 F.2d at 1053–55. But remaining to consider is whether *Batson* affects the analysis of the availability of a *Swain*-type claim to Neumann during his state direct appeal. *Batson* was decided April 1986; the Illinois Appellate Court affirmed Neumann's conviction initially in August 1986 and denied rehearing in November 1986.

One fundamental point here is that *Swain*-claim cross-racial standing and *Batson*-claim cross-racial standing have two different histories. *Batson*-claim cross-racial standing did not arrive until *Powers*. *Swain*-claim cross-racial standing is traced to the Supreme Court's *Peters* decision. There are two sources of support for assigning a meaningful distinction to the cross-racial standing histories of *Batson* and *Swain* claims. First, *Batson*, in articulating a test that would exclude cross-racial standing, did not come to grips either with *Peters* or any circuit court cases reading *Peters* as approving cross-racial standing for *Swain* claims, suggesting it did not need to come to grips with those cases because they applied to a different sort of claim. Second, the *Powers* decision used as a basis for its *Batson*-claim analysis the *Peters* analysis on *Swain* claims: "In *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), Justice White spoke of 'the strong statutory policy of § 243, which reflects the central concern of the Fourteenth Amendment.' *Id.*, at 507, 92 S.Ct., at 2170 (concurring in judgment). The Court permitted a white defendant to challenge the systematic exclusion of black persons from grand and petit juries." *Powers*, 499 U.S. at

408, 111 S.Ct. at 1369.[3] Viewed as such, *Batson's* implicit rejection of cross-racial standing for *Batson*-type claims is not directly relevant to the history of *Swain*-type claims.

Additionally, leaving aside any distinctions in the history of cross-racial standing, it would be hard to categorize *Batson* on standing as the "cause" of Neumann's default. It is not as if Neumann, bolstered by *Peters* (and later by *Gometz* ), had been pressing a systematic exclusion claim when *Batson* came along and *caused* him to withdraw his jury-selection objections. The jury selection issue was nowhere to be seen on direct appeal. And since the jury selection issue he could press now (systematic exclusion plus exclusion in his trial) was reasonably available at the state court level, that claim is defaulted.

In sum, sufficient legal bases were available to petitioner and his counsel at the time of petitioner's state proceedings. This court cannot conclude that some external, objective factor resulted in petitioner's failure to preserve or raise his current legal claim during his state court proceedings.

### 2. *Availability of Factual Basis*

 Petitioner next contends that he was unable to introduce evidence of systematic racial discrimination at trial because such information was not available or known to him at the time of his trial. Similarly, petitioner states that "the record did not contain systemic information which would have permitted review on direct appeal." (Petition for Writ of Habeas Corpus at 8, ¶ 13.) Finally, petitioner contends that such information was outside of the scope of appropriate trial issues and that it was unlikely that the trial court would have entertained such a challenge during the course of his trial. Petitioner argues that these factors constitute sufficient cause to excuse procedural default.

The factual argument petitioner now asserts was similarly available at the time of his state proceedings. Therefore, petitioner now wishes to introduce facts that were not introduced during state proceedings. But petitioner fails to identify any facts existing now that were not in existence at the time he was proceeding in the Illinois state courts.

The affidavits submitted by petitioner, including that of petitioner's trial and appellate counsel (now petitioner's counsel on habeas review), contradict petitioner's factual argument. In fact, the affidavits allege that facts relating to the state's systematic use of race-based peremptory strikes were available at the time petitioner was pursuing state court relief. Specifically, each affidavit states that "*at that time,* it was *very common* for the prosecutors in Cook County to exclude African Americans from juries. I believed *then* and now that racial discrimination was the reason for the practice." *(emphasis added).*

Evidence of systematic racial discrimination was as readily available to petitioner at the time of his trial as it is today. Petitioner's trial counsel should have attempted to gather and introduce into the record evidence of systematic discrimination during the course of petitioner's trial. In fact, in conjunction with his objection challenging the jury selection, petitioner's counsel could have sought leave to introduce evidence that would meet the *Swain* standard. *United States ex. rel. Allen v. Hardy,* 583 F.Supp. 562 (N.D.Ill. 1984), *denial of certificate of probable cause affirmed sub. nom. Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). At that point the state judge could have addressed the issue in any of several ways. For example: counsel "might have been granted a continuance to gather evidence on systematic exclusion" of potential jurors, or counsel "might have made an offer of proof and proceeded with the trial." *Id.* at 563.

Had petitioner objected to the state's use of its peremptory strikes, the issue would have been within the scope of appropriate trial issues to be addressed by the court. Petitioner cannot seriously argue that the trial court was "unlikely" to have entertained an attempt to introduce evidence into the trial record when petitioner in fact failed to even attempt such. At the very least, the trial court was obligated to allow petitioner to make an offer of proof with respect to the

---

3. Of course, because of the timing here, on this point *Powers* is guidance, not precedent.

existence of systematic exclusion. Petitioner failed to make such an offer of proof. This court cannot conclude that some external "objective" factor resulted in petitioner's failure to preserve or raise his current factual claim during the pendency of his state court proceedings.

 Overall then, petitioner fails to demonstrate cause sufficient to overcome petitioner's procedural default. The mere fact that petitioner's counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default. *See Engle v. Isaac,* 456 U.S. at 133–34, 102 S.Ct. at 1575. Petitioner does not present a compelling case for overriding the general principle that a federal court should not intrude in a state's criminal process when the state's highest court has not had an opportunity to rule on the constitutional issue presented.[4]

### III. CONCLUSION

Lawrence Neumann's petition for writ of habeas corpus is denied with prejudice.

---

4. A court need not examine prejudice if cause is not demonstrated. *MacDougall v. McCaughtry,* 951 F.2d 822, 825 (7th Cir.1992). As petitioner has not demonstrated cause for his procedural failures in regard to the present action, this court will not address the issue of prejudice.